John R. TRICE, Individually, and T & H Materials, Ltd., d/b/a J & J Sand & Gravel Company, Appellants,

v.

STATE of Texas, Appellee.

No. 10-85-265-CV.

Court of Appeals of Texas, Waco.

June 13, 1986.

Rehearing Denied July 10, 1986.

(Table B) (1983).

---

1. This data is compiled in the U.S. Bureau of the Census, County and City Data Book 1983, 550

Charles B. McGregor, Greg White, McGregor & White, Waco, for appellants.

Jim Mattox, Atty. Gen., Mary F. Keller, Executive Asst. Atty. Gen. for Litigation, Nancy N. Lynch, Asst. Atty. Gen., Chief, Environmental Protection Div., John R. Carter, Asst. Atty. Gen., Austin, for appellee.

## OPINION

THOMAS, Justice.

This is a suit by the State of Texas to remove a bridge which had been constructed without its approval across the Brazos River near Waco in McLennan County. John R. Trice, individually, and T & H Materials, Ltd., doing business as J & J Sand & Gravel Company, are defendants-appellants. Trice was a general partner of T & H Materials, a limited partnership, which operated J & J Sand & Gravel.[1] Trice claimed that he had been granted permission to erect the bridge under a permit from the U.S. Army Corps of Engineers and that he did not need the State's permission due to a conflict between its regulatory scheme and that of the federal government. Therefore, he contended that the State's regulatory authority had been preempted by the Supremacy Clause of the United States Constitution to the extent of the conflict. See U.S. Const. art. VI, cl. 2. The State, which sought damages, attorney's fees and injunctive relief, alleged that it owned the bed and bottom of the river and that the bridge not only obstructed the river and its navigation but constituted a trespass, a purpresture, and a public nuisance.[2] Trice tried to transfer the suit from McLennan County to Dallas County where he had his domicile, but the court denied his motion to transfer. The court issued a preliminary restraining order and later entered a temporary injunction which enjoined Trice from using or completing construction of the bridge "until judgment in this cause is entered by [the trial] Court".

The jury found that the bridge obstructed navigation and that $42,000.00 would reasonably compensate the State for the cost of removing the bridge and restoring the bed and bottom of the river to its natural condition. The jury also found that 317 cubic yards of sand and gravel had been disturbed or taken from the river during the bridge's construction and that $46,000.00 would reasonably compensate the State as attorney's fees for the preparation, trial and appeal of the case. The State waived its right to recover the $42,000.00 in damages to remove the bridge in favor of a permanent mandatory injunction which would require Trice, at his own expense, to remove the bridge and restore the bed and bottom of the river. Accordingly, the court entered a judgment in favor of the State which ordered Trice to: (1) remove the bridge from the river and restore the bed and bottom of the river to its natural condition; (2) pay the State $79.25 (317 cubic yards × $0.25) for the value of sand and gravel which had been removed

---

1. All references in this opinion to Trice are also to T & H Materials.

2. A "purpresture" is an encroachment upon public rights and easements or the appropriation to private use of that which belongs to the public. *Hill Farm, Inc. v. Hill County,* 436 S.W.2d 320, 321 (Tex.1969).

from the river during the bridge's construction; and (3) pay the State $46,000.00 in attorney's fees, with specific amounts to be credited against this award at various levels of the appellate process. The questions on appeal relate to venue, the Supremacy Clause of the United States Constitution, the court's charge and the award of attorney's fees. This appellate court granted the State permission to file a motion to hold Trice in contempt for violating the temporary injunction while the appeal on the merits was pending. The judgment is affirmed, but the motion for contempt is denied.

The disposition of the first three points of error, which relate to venue, depends upon whether venue was controlled by article 4656, as Trice contends, or section 11.078 of the Texas Natural Resources Code, as contended by the State. Article 4656, which was in effect at the time the suit was filed and tried, provided in part:

> [W]rits of injunction for other causes, if the party against whom it is granted be an inhabitant of the State, shall be returnable to and tried in the district or county court of the county in which such party has his domicile, according as the amount or matter in controversy comes within the jurisdiction of either of said courts. If there be more than one party against whom a writ is granted, it may be returned and tried in the proper court of the county where either may have his domicile.

Tex.Rev.Civ.Stat.Ann. art. 4656 (Vernon 1940) (repealed effective September 1, 1985, and now codified at Tex.Civ.Prac. & Rem. Code Ann. § 65.023 (Vernon 1986)). However, section 11.078 of the Natural Resources Code provides: "A suit brought under the provisions of ... Section 11.077 of this code shall be brought in the county in which the land or any part of the land is located." Tex.Nat.Res.Code Ann. § 11.078 (Vernon 1978). Section 11.077 provides: "If any

public land is held, occupied or claimed adversely to the state or to any fund of the state by any person or if land is forfeited to the state for any reason, the attorney general shall file suit for the land, for rent on the land, and to recover damages to the land." Tex.Nat.Res.Code Ann. § 11.077 (Vernon 1978).

Trice relies primarily on *Brown v. Gulf Television Company*, 157 Tex. 607, 306 S.W.2d 706 (1957), to support his argument that venue was controlled by article 4656. In *Brown*, the Texas Supreme Court held that article 4656 was mandatory and governed venue when "the petition discloses that the issuance of a perpetual injunction is the primary and principal relief sought". *Id.* 306 S.W.2d at 708. Therefore, he contends that the original petition, which was the operative pleading at the time the venue question was raised, reflects that the State sought injunctive relief as its "primary goal". Trice admitted during discovery that the State owned the title to the bed and bottom of the river. Consequently, he argues that the State's title was not an issue between the parties and that he was not claiming title to or an interest in the bed and bottom of the river but was simply asserting a permissive right, granted by preemptive federal authority, to erect and use the bridge. However, the State insists that the allegations in the original petition disclosed that the suit was primarily to recover the possession of and damages to state-owned land and to remove the bridge as an unlawful encroachment. Therefore, it claims that the injunctive relief was "merely ancillary." Trice's arguments on venue must be rejected.[3]

Whether a suit is of the type or character described in section 11.077 of the Natural Resources Code, formerly article 5420, must be determined from the allegations in the petition. *See Heard v. State*, 149 S.W.2d 237, 238 (Tex.Civ.App.—Beaumont 1941, no writ). Likewise, the allegations in

---

**3.** Due to the disposition of the venue points, article 4643 is not discussed. *See* Tex.Rev.Civ. Stat.Ann. art. 4643 (Vernon 1952), *repealed by* Act of June 16, 1985, ch. 959, § 9(1), 1985 Tex. Sess.Law Serv. 7218 (Vernon) (now codified at Tex.Civ.Prac. & Rem.Code Ann. § 65.022 (Vernon 1986)).

the petition will also determine whether the relief sought by the State was "purely or primarily injunctive". *See Ex parte Coffee*, 160 Tex. 224, 328 S.W.2d 283, 287 (1959). In its original petition, the State alleged that it held title to the water, bed and bottom of the Brazos River as a trustee for the public, that the river was navigable in fact and in law, that the bridge obstructed navigation and that Trice had constructed the bridge "on public lands without the consent of the State and [had] thus occupied public lands". The State also charged in its original pleading that the bridge constituted a purpresture, a public nuisance and a trespass, and among other remedies, sought permanent injunctive relief "to compel [Trice] to remove the obstruction to navigation and to restore [the State] to possession of its property".

The State's original petition showed on its face that the suit was brought under section 11.077 of the Natural Resources Code because it contained allegations that (1) public land (2) was being occupied (3) adversely to the State (4) by Trice. *See* Tex.Nat.Res.Code Ann. § 11.077. Thus, the suit was to recover possession of and damages to state-owned land that had been "occupied" by Trice without lawful authority. *See Heard*, 149 S.W.2d at 238. Moreover, the original petition disclosed that the suit was not one purely for injunctive relief, as Trice contends, but was related to land or rights appurtenant to land owned by the State. *See Southwest Weather Research, Inc. v. Jones*, 160 Tex. 104, 327 S.W.2d 417, 420 (1959).

Trice insists that the holding in *Brown* controls the disposition of the venue points. However, in *Marshall v. Ballard*, 314 S.W.2d 368, 371–73 (Tex.Civ.App. —Eastland 1958, writ dism'd), which the Supreme Court cited with approval in *Southwest Weather Research*, the Eastland Court of Civil Appeals pointed out why *Brown* is not controlling under the facts presented. In *Brown*, the pleadings

did not raise any question involving the plaintiff's land or rights appurtenant to his land but merely sought injunctive relief to remove an antenna tower from the defendant's land. *Marshall*, 314 S.W.2d at 371. Here, the State's pleading reflected that its own land was involved and that it was seeking to protect, through a suit for injunctive relief and damages, its own land from Trice's alleged unlawful encroachment. Because the allegations of the original petition established that the suit was brought under section 11.077 of the Natural Resources Code and that the principal relief sought by the State was not "purely or primarily injunctive", section 11.078 of the Natural Resources Code governed the venue of the suit. Therefore, venue was proper in McLennan County where the bridge was located, and the court did not err when it denied Trice's motion to transfer the case to Dallas County. Points one through three are overruled.

The concurrent or joint right of the federal and state governments to regulate the construction of bridges over navigable waterways is well established. *See Montgomery v. Portland*, 190 U.S. 89, 23 S.Ct. 735, 737–38, 47 L.Ed. 965 (1903). The federal government's power is derived from its constitutional authority to regulate interstate and foreign commerce. *See Escanaba & Lake Michigan Transp. Co. v. City of Chicago*, 107 U.S. 678, 2 S.Ct. 185, 188, 27 L.Ed. 442 (1883); U.S. Const. art. I, § 8, cl. 3. However, the authority of the states to regulate bridge construction over the navigable waters within their boundaries is derived from their historic police powers. *Id.* 2 S.Ct. at 189. In fact, a state has plenary power over the navigable waters within its jurisdiction until Congress acts on the subject in such a manner that it preempts the state's authority. *See id.*

Congress has enacted several statutes relating to the construction of bridges and other structures over or in the nation's navigable waters.[4] It has granted general

---

4. *See, e.g.*, 33 U.S.C.A. § 401 (West 1986) (prohibiting the construction of a bridge over the navigable waters of the United States until Con-

gress has granted its consent for the construction and the plans for the bridge have been approved by the Secretary of Transportation);

consent for "the construction, maintenance, and operation of bridges and approaches thereto over the navigable waters of the United States", provided that the Secretary of Transportation has approved the location and plans for the bridge. *See* The General Bridge Act of 1946, 33 U.S.C.A. § 525(a) (West 1986). Clearly, Congress has "acted" on the subject of bridge construction over the nation's navigable waters. Whether such action has preempted the State's regulatory authority will be discussed later in the opinion.

The State, through legislative action, has also authorized certain entities to erect bridges over the navigable waters within its boundaries.[5] However, except for its tidal waters, the State has not authorized an individual to construct a bridge over its navigable waters.[6] Furthermore, the State has not created an agency or designated any public official to regulate bridge construction over its navigable waters.

█ Trice contends in his eleventh point that he could not have committed a purpresture or a trespass because he had "permission" to build the bridge. Therefore, he argues that the court erred when it entered a judgment in the State's favor based on a finding of a purpresture or a trespass. His claim of permission is based solely on a nationwide permit issued by the Corps of Engineers under the Clean Water Act. *See* 33 U.S.C.A. § 1344(e) (West 1986). The nationwide permit upon which Trice relies authorized the "[d]ischarge of concrete into tightly sealed forms or cells

where the concrete is used as a structural member which would not otherwise be subject to Clean Water Act jurisdiction." *See* 33 C.F.R. § 330.5(25) (1985). The Clean Water Act, which authorizes the Corps of Engineers to issue permits "for the discharge of dredged or fill material" into the nation's navigable waters, does not expressly or by implication authorize the Corps of Engineers to grant permits for the construction of bridges. 33 U.S.C.A. § 1344(a). That authority has been delegated to the Coast Guard. *See* 49 C.F.R. §§ 1.45(b), 1.46(c)(5), (6), (8), (9), (10). Trice cannot rely on a "dredge or fill" permit issued by the Corps of Engineers under the Clean Water Act to support his claim that he had permission to erect the bridge. Accordingly, point eleven is overruled.

In his twelfth point, Trice contends that the State's property rights in the navigable rivers within its boundaries are subject to federal laws, which permit individuals to construct bridges across those rivers, and that the Supremacy Clause of the United States Constitution nullifies the State's regulatory authority to the extent that it conflicts with federal law. Essentially, he argues that there is a conflict between federal and state regulatory schemes because federal law authorizes an individual to obtain a permit to build a bridge over the Brazos River and the State denies an individual that same right. He apparently contends that the Supremacy Clause has nullified the State's regulatory authority to such an extent that he did not need its

---

33 U.S.C.A. § 403 (prohibiting the building of certain structures in the navigable waters of the United States except on the recommendation and authorization of the Department of the Army); 33 U.S.C.A. § 491 (granting the consent of Congress for any person to erect a bridge across the nation's navigable waters if the plans and specifications for its construction are approved by the Secretary of Transportation). The Secretary of Transportation has delegated to the Coast Guard his authority to approve the construction of bridges. *See* 49 C.F.R. §§ 1.45(b), 1.46(c)(5), (6), (8), (9), (10) (1985).

5. *See* Tex.Rev.Civ.Stat.Ann. art. 6702–1, § 2.201 (Vernon Supp.1986) (counties); Tex.Rev.Civ. Stat.Ann. art. 1015, § 25 (Vernon 1963) (munici-

palities); Tex.Rev.Civ.Stat.Ann. arts. 6320, 6329 (Vernon 1926) (railroads); Tex.Rev.Civ.Stat. Ann. art. 1459 (Vernon 1980) (toll road corporations).

6. *See* Tex.Rev.Civ.Stat.Ann. art. 1466 (Vernon 1980) (authorizing "[a]ny person, corporation or association of persons" to build "a combination bridge, dam, dike, causeway and roadway across any arm of the Gulf of Mexico or inlet thereof, or any of the saltwater bays, wholly within the limits of this State"). The right of an individual to construct a bridge across a river under this statute depends upon whether the portion of the river, where the proposed bridge is to be located, is subject to the ebb and flow of the tide. Op.Tex.Att'y Gen. No. 0–6672 (1945).

permission and thus he could not be guilty of violating the State's property rights through a purpresture or a trespass.

The Supremacy Clause of the United States Constitution provides in part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Federal law may supersede state law in several ways: (1) Congress may preempt all state law in a particular field by express preemptive language; (2) Congress may inferentially preempt all state law in a particular field, in the absence of express preemptive language, when the scheme of federal regulation is sufficiently comprehensive to reasonably infer that Congress has "left no room" for supplementary state regulation; or (3) even where Congress has not displaced state regulation in a particular field, federal law will nullify state law to the extent that they actually conflict. *Hillsborough County, Fla. v. Auto. Med. Labs.*, 471 U.S. ——, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). State law can be preempted by either federal statutes or federal regulations. *Id.* To determine whether federal law has preempted state authority, both statutory schemes must be reconciled with one another, if possible, rather than preemptorially construing the federal statutory scheme as completely ousting that of the state. *See Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963).

Trice admits that Congress has not expressly or inferentially preempted the State's regulatory authority over the construction of bridges across the navigable waters within its boundaries. Instead, he claims that the State's regulatory scheme must yield under the Supremacy Clause because an actual conflict exists between that scheme and the federal scheme. However, conflicts between state and federal law should not be sought out where none clearly exist. *Joseph E. Seagram & Sons,*

*Inc. v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 1261, 16 L.Ed.2d 336 (1966).

■ Although the federal regulatory scheme allows an individual, after obtaining the proper permit, to erect a bridge across the Brazos River, the federal scheme does not mandate that the State must establish a similar regulatory scheme which would allow an individual to obtain the same permission. The United States Supreme Court has stated:

> [W]hether or not Congress had [the] power to authorize private persons to build in [the navigable waters wholly within a state] without the consent of the State, an act making comprehensive regulations of work within [the navigable waters wholly within a state] did not manifest a purpose to exclude the previously existing authority of the State over such work.

*International Bridge Co. v. People of State of New York*, 254 U.S. 126, 41 S.Ct. 56, 58, 65 L.Ed. 176 (1920). If the State must match its action with that of the federal government, as Trice essentially contends, then its right to regulate the construction of bridges over the navigable waters within its boundaries would be meaningless. The right of the State to grant its permission for an individual to construct a bridge across its navigable tidal waters, which is evidenced by article 1466, must necessarily encompass the right to withhold its permission for individuals to construct bridges over those navigable waters which are not subject to the ebb and flow of the tide. *See* Tex.Rev.Civ.Stat. Ann. art. 1466; Op.Tex.Att'y Gen. No. 0–6672 (1945).

The regulatory scheme of the State can be harmonized and co-exist with the regulatory scheme at the national level. The effect of the federal regulatory scheme, as it relates to the construction of a bridge across the Brazos River, can be reasonably interpreted to make the erection of such a bridge dependent upon the State's concurrent or joint assent. *See Cummings v. Chicago*, 188 U.S. 410, 23 S.Ct. 472, 477, 47

L.Ed. 525 (1903). Without the State's consent, Trice could not have lawfully erected the bridge even if he had obtained the proper permit from the federal government. *See id.* Accordingly, because the federal regulatory scheme clearly envisions the right of the State to grant or withhold its permission, the two regulatory schemes do not conflict. In the absence of a conflict, the Supremacy Clause does not nullify the State's regulatory authority over the navigable waters within its boundaries. *See Hillsborough County, Fla.*, 105 S.Ct. at 2375. Therefore, point twelve is overruled.

Before turning to points four through seven, in which Trice complains about the charge, the Texas Supreme Court's holding in *City of Galveston v. Mann*, 135 Tex. 319, 143 S.W.2d 1028 (1940), should be analyzed for its impact on these points. There, the Court held that a ninety-foot-wide pier, which the City of Galveston proposed to construct from its seawall a distance of 1200 feet into the Gulf of Mexico, would constitute an encroachment upon the state's property rights in its tide lands and tidal waters. *Id.* 143 S.W.2d at 1034. The Court stated: "Such a structure in legal phraseology would constitute a purpresture, *which would be subject to be removed at the instance of the State, whether the same should tend to obstruct navigation or otherwise.*" *Id.* 143 S.W.2d at 1034 (emphasis added). Applying that holding to this case, if Trice's bridge constituted a purpresture, then the State had a right to have it removed regardless of whether it obstructed the river or its navigation. *See id.*

Trice conceded that the State owns the bed and bottom of the Brazos River. *See* Tex. Parks & Wild.Code Ann. § 1.011(c) (Vernon 1976). Furthermore, in response to a request for admissions, he admitted that he had built the bridge and that it occupied the bed and bottom of the river. Under Rule 169(2), these admissions conclusively established that Trice was responsible for erecting a structure which encroached upon the State's land. *See* Tex.R. Civ.P. 169(2). The only issue which remained was whether Trice had permission to erect the structure. Trice admitted that he had erected the bridge without the State's permission, although he claimed that he did not need permission from the State due to a conflict between its regulatory scheme and that of the federal government. His contentions relating to permission and to an alleged conflict between state and federal law have already been rejected in the disposition of points eleven and twelve. Therefore, at the time the court submitted the charge to the jury, the evidence conclusively established all of the elements of purpresture: Trice had erected a structure which encroached upon the State's land without its permission. *See Hill Farm, Inc.*, 436 S.W.2d at 321. Thus, the State was entitled to a directed verdict on the theory of purpresture. *See Air Conditioning v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422, 425 (1952).

In its charge, the court asked the jury to determine whether: (special issue one) Trice was obstructing the navigation of the river; (special issue two) Trice had intentionally or knowingly obstructed the river without legal privilege or authority; (special issue three) Trice had intentionally entered upon or occupied the bed and bottom of the river by constructing the bridge; and (special issue four) Trice continued to occupy the bed and bottom of the river with his bridge. In his sixth and seventh points, Trice contends that the court erred when it submitted the first two issues which inquired about the obstruction of the river and its navigation. He complains that these two issues had been improperly submitted because they were a duplicate submission of the same fact question and were accompanied by two different definitions of "obstruct" which, he alleged, confused the jury. The State argues that the first two issues were not duplicate submissions of the same fact or cause of action because special issue one submitted the common law theory of obstruction of navigation, accompanied by the usual definition of "obstruct", and the second special issue

was based on the violation of section 42.03 of the Texas Penal Code, which provides that a person commits a criminal offense if he obstructs a waterway. *See* Tex.Penal Code Ann. § 42.03 (Vernon 1974). The State points out that section 42.03(c) contains a different definition of "obstruct", which was included in the definition accompanying the second special issue. *See id.* § 42.03(c).

Trice also complains in points four and five that the court erred when it submitted uncontroverted issues to the jury in special issues three and four. In these issues, the jury was asked whether Trice had intentionally occupied the river with his bridge and whether he continued to occupy the river with his bridge at the time of trial. He correctly points out, as previously noted, that both of these issues inquired about facts which had already been conclusively established in the State's favor, and he contends that their submission constituted a comment on the weight of the evidence. Trice argues under his combined points of error that the errors resulting from the duplicate submission of the issues relating to obstruction (special issues one and two), with two different definitions of "obstruct", and the submission of undisputed facts (special issues three and four) entitles him to a reversal because the combined errors confused the jury and caused the rendition of an improper judgment. This contention must be rejected.

Error arising from the submission of duplicate issues may be harmless. *Holmes v. J.C. Penney Company*, 382 S.W.2d 472, 473 (Tex.1964). However, the submission of duplicate issues will result in a reversal if such submission has influenced the jury to return a verdict different from what it would have otherwise returned. *See Denton County Electric Co-op., Inc. v. Burkholder*, 354 S.W.2d 639, 643 (Tex.Civ.App. —Fort Worth 1962, writ ref'd n.r.e.). Furthermore, a court should not submit undisputed facts to the jury. *Sullivan v. Bar-*

*nett*, 471 S.W.2d 39, 44 (Tex.1971); Tex.R. Civ.P. 277, 279. However, the submission of undisputed facts does not ordinarily result in reversible error. *City of Houston v. Parkinson*, 419 S.W.2d 900, 903 (Tex. Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.); Tex.R.Civ.P. 434.

■ The State was entitled to a directed verdict on the theory that the bridge constituted a purpresture. Thus, it was entitled to have the bridge removed regardless of whether it obstructed the river or its navigation. *See Hill Farm, Inc.*, 436 S.W.2d at 321; *City of Galveston*, 143 S.W.2d at 1034. Consequently, the findings on the first two special issues dealing with obstruction of the river were immaterial to the State's right to recover on the theory of purpresture, and therefore any error involved in their submission would have been harmless.[7] *See Freeman v. Magnolia Petroleum Co.*, 141 Tex. 274, 171 S.W.2d 339, 342 (1943). Likewise, the errors resulting from the submission of special issues three and four, which inquired about undisputed facts already conclusively established in the State's favor, would have been harmless for the same reason. *See id.* Trice is not entitled to a reversal because the errors in the charge did not result in the rendition of an improper judgment. Tex.R. Civ.P. 434. Points four through seven are overruled.

The State alleged in its pleadings that it was entitled to recover reasonable attorney's fees from Trice under article 3917 which provides in part: "In a case in which the State is *entitled to recover* penalties or damages, the Attorney General is entitled to recover and collect reasonable attorney's fees and court costs on behalf of the State." Tex.Rev.Civ.Stat.Ann. art. 3917 (Vernon Supp.1986) (emphasis added). The jury found that $42,000.00 would reasonably compensate the State for the cost of removing the bridge from the river and

7. However, the issues on obstruction did submit controlling fact issues on the State's theory that the bridge also constituted a public nuisance. As a purpresture, the bridge would have been enjoinable as a public nuisance if it affected the public's right to the immediate use of the river. *See Hill Farm, Inc.*, 436 S.W.2d at 321.

restoring the bed and bottom of the river to its natural condition. However, the State waived its right to recover the $42,000.00 in damages in favor of a permanent mandatory injunction which required Trice to remove the bridge and restore the bed and bottom of the river at his own expense. The pivotal question presented by Trice's eighth point is whether the State also waived its right to recover attorney's fees under article 3917 when it waived its right to recover the $42,000.00 in damages. Trice argues that the State had to obtain a judgment for $42,000.00 in damages before it could recover its attorney's fees under the statute. However, the State asserts that the jury's finding established that it was "entitled to recover" the $42,000.00 in damages and that article 3917 provides that it can recover reasonable attorney's fees in any case in which the State is "entitled to recover" damages. *Id.*

■ Article 3917 does not require the state to obtain a judgment for damages before it can recover attorney's fees but only that it establish that it is "entitled to recover" damages. *Id.* The State established that it was "entitled to recover" damages by obtaining a jury finding to that effect. This finding established its right to recover reasonable attorney's fees under article 3917. When the State waived its $42,000.00 in damages, it did not waive its right to recover reasonable attorney's fees. Therefore, the eighth point of error is overruled.

■ In point ten, Trice argues that the court erred when it entered a judgment in favor of the State for $46,000.00 in attorney's fees. He contends that the amount of the attorney's fees was excessive and wholly unreasonable when compared to the $79.25 which was awarded the State for the value of the gravel and sand disturbed or taken from the river during the bridge's construction. The $46,000.00 in attorney's fees awarded in the judgment is not an excessive and unreasonably proportioned award when compared with the additional $42,000.00 of damages which the State was "entitled to recover" under the jury's ver-

dict. Although the State did not obtain a judgment for all of the actual damages to which it was entitled, the amount awarded by the jury as attorney's fees must be compared to what the State was "entitled to recover" and not to the amount of damages that the State was actually awarded in the judgment. *Cf. Fort Worth Elevators, Inc. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 409 (1934) (holding that the amount of exemplary damages recovered under section 5 of the Texas Workers' Compensation Act must be compared with the amount of actual damages even though actual damages cannot be recovered in a judgment under section 5). Therefore, point ten is overruled.

Finally, Trice contends in his ninth point that the court erred when it awarded the State a judgment for $46,000.00 in attorney's fees because the State had failed, in presenting its evidence on attorney's fees, to segregate the amount of time which its attorneys had spent on establishing the State's right to recover damages and the time which had been spent on establishing its right to an injunction. He argues that article 3917 does not allow the State to recover attorney's fees for injunctive relief. However, the State insists that it did not have to allocate its attorneys' hours between damages and injunctive relief because these claims were inextricably intertwined.

■ As previously noted, the State was entitled under the evidence to a directed verdict on its theory that the bridge constituted a purpresture. This entitled the State to recover damages and injunctive relief to remove the bridge as an unlawful encroachment upon its land. *See Hill Farm, Inc.,* 436 S.W.2d at 321; *City of Galveston,* 143 S.W.2d at 1034; Tex.Nat. Res.Code Ann. § 11.077. Under the facts, no error is presented because the issues relating to damages and injunctive relief were so inextricably intertwined within the theory of purpresture as to defy segregation between those hours devoted to establishing the State's right to recover damages and those hours devoted to establish-

ing its right to injunctive relief. *See De La Fuente v. Home Sav. Ass'n,* 669 S.W.2d 137, 146 (Tex.App.—Corpus Christi 1984, no writ). Consequently, point nine is overruled.

After Trice had perfected his appeal on the merits, this court granted the State permission to file a contempt motion against him in which it alleged that he had violated a temporary injunction issued by the trial court.[8] The temporary injunction enjoined Trice from constructing and using the bridge "until judgment in this cause is entered by [the trial] Court". Trice contends that the temporary injunction had expired under its own terms when the court below entered a final judgment on the merits. However, the State argues that the temporary injunction remained in effect even after a judgment had been entered because the judgment had been suspended on appeal when Trice filed a supersedeas bond. Although the State admits that the permanent mandatory injunction, which ordered Trice to remove the bridge from the river, has been suspended by the filing of a supersedeas bond, it contends that the supersedeas bond did not suspend the temporary injunction. Therefore, it argues that Trice can be punished by contempt for violating the temporary injunction.

In *Williams v. Pouns,* 48 Tex. 141, 145 (1877), the Texas Supreme Court held that a temporary injunction, which was dissolved by a final judgment, was continued in force when the final judgment was appealed under a supersedeas bond. This holding was followed in *Gulf, C. & S.F. Ry. Co. v. Fort Worth & N.O. Ry. Co.,* 68 Tex. 98, 2 S.W. 199, 201 (1886), *reh'g denied,* 68 Tex. 98, 3 S.W. 564, 566 (1887), in which the Texas Supreme Court restated the holding in *Williams* as follows: "[W]hen an injunction is dissolved in a final judgment, and an appeal is prosecuted by giving a supersedeas bond, the dissolution is suspended, and

the injunction is continued in force by the appeal." Stating the holding in this manner suggested that a temporary injunction, regardless of its terms or conditions, would automatically be continued in effect beyond the entry of a final judgment on the merits, if the final judgment was suspended on appeal by the filing of a supersedeas bond. Under such an interpretation, the critical question would be whether a supersedeas bond has been filed. However, in *Riggins v. Thompson,* 96 Tex. 154, 71 S.W. 14, 16 (1902), the Texas Supreme Court explained why the temporary injunction in *Gulf, C. & S.F. Ry. Co.,* was continued in force after the final judgment had been appealed under a supersedeas bond:

> [T]he order of the judge expressly restrained the defendants from doing the acts complained of *until the final determination of the suit.* Since the suit was not terminated until the appeal had been heard and determined, it was held [in *Gulf, C. & S.F. Ry. Co.*] that although upon the trial in the district court the injunction had been dissolved, an appeal which superseded the judgment kept the injunction in force until the appeal was determined.

(Emphasis added). Thus, the court emphasized in *Riggins* that the holding in *Gulf, C. & S.F. Ry. Co.* was based upon the provisions of the temporary injunction relating to its expiration and was not decided merely on the basis that a supersedeas bond had been filed.

More recent decisions have reiterated that an appellate court must focus on the condition or contingency set by the trial court for a temporary injunction's expiration when determining whether the temporary injunction is to be continued in effect while the final judgment is being appealed under a supersedeas bond. In *Dallas Cowboys Football Club, Inc. v. Harris,* 348 S.W.2d 37, 40 (Tex.Civ.App.—Dallas 1961,

---

8. The State attached an affidavit from Ralph White, the County Engineer of McLennan County, to its motion for leave to file. In the affidavit, White stated that he had observed Trice constructing the road across the bridge on

March 28, 1986, and that Trice had told him that he intended to complete the road and use the bridge while the judgment on the merits was being appealed.

no writ), the trial court had provided that a temporary injunction would remain in effect "pending [a] final hearing and determination of this cause". The appellate court held that the temporary injunction was not suspended by the filing of a supersedeas bond but remained in effect pending a final determination on appeal. *Id.* However, in *G & R Investments v. Nance*, 588 S.W.2d 804, 806 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.), the court held that a temporary injunction, which was to remain in effect "pending [a] final hearing hereof", had expired under its own terms when the trial court entered a judgment on the merits. The court noted that the temporary injunction "was not intended to remain in effect until the final disposition of the case in the appellate courts." *Id.*

The trial court expressly enjoined Trice from constructing or using the bridge only "until judgment in this cause is entered by this Court". The State suggested during the oral argument of its motion for contempt that this phrase must be construed as continuing the temporary injunction until the appeal of the judgment on the merits has been finally determined. It reasoned that such a construction must be accepted because, otherwise, the status quo would not be maintained until the appeal on the merits has been finally determined. The trial court did not hint or suggest that the temporary injunction would continue in effect pending a final determination of the merits on appeal. Instead, it clearly stated the event upon which the temporary injunction was to expire: the entry of a judgment in the trial court.

■ Considering the plain, unambiguous language used by the trial court to state the condition or contingency upon which the temporary injunction was to expire, the only reasonable interpretation is that the temporary injunction was to remain in effect only until the trial court entered a judgment in this cause. *See G & R Investments*, 588 S.W.2d at 806. Undoubtedly, that contingency or condition has occurred, and the temporary injunction thus expired when the trial court entered its judgment

on the merits. Because the temporary injunction ceased to exist when the trial court entered its judgment, Trice cannot be punished by contempt for violating a nonexistent temporary injunction.

The trial court could have continued the temporary injunction in effect while the judgment on the merits was being appealed under a supersedeas bond. *See Riggins*, 71 S.W. at 16; *Gulf, C. & S.F. Ry. Co.*, 2 S.W. at 201; *Dallas Cowboys Football Club, Inc.*, 348 S.W.2d at 40. This result could have been achieved by expressly providing in the temporary injunction that it would remain in effect pending a final determination in the appellate courts of the appeal on the merits. However, the temporary injunction was not drafted in that manner, and this court cannot rewrite the terms of the temporary injunction, under the guise of construing it, to obtain the result which the State now desires.

Accordingly, we deny the State's motion for contempt and dissolve the injunction previously entered by this court which enjoined Trice from constructing or using the bridge pending a hearing on the contempt motion.

All points of error having been overruled, the judgment is affirmed.