Steven S. TUROFF, as Trustee of
The ProMedCo Recovery
Trust, Appellant,

v.

Jack W. McCASLIN, H. Wayne Posey,
Arthur Andersen, LLP, Charles W.
McQueary, Robert D. Smith, Dale K.
Edwards, Robert M. Sontheimer, E.
Thomas Chaney, James F. Herd, Rich-
ard E. Ragsdale, and Deborah A.
Johnson, Appellees.

No. 10–04–00144–CV.

Court of Appeals of Texas,
Waco.

March 21, 2007.

John W. Proctor, Brown Herman Dean Wiseman Lister & Hart, Fort Worth, Dan M. Boulware, MaClean & Boulware, Lisa M. Powell, Cleburne, Mary A. Keeney, Graves Doughterty Hearon & Moody, Austin, Steven K. Dewolf, Bellinger McManemin & DeWolf LLP, O. Rey Rodriguez, Karl Glenn Dial, Fulbright & Jaworski LLP, Dallas, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

While ProMedCo was in bankruptcy, some of the entities and other persons interested in the bankruptcy entered into an agreement to contribute causes of action they had in connection with the downfall of ProMedCo to a litigation trust. A Litigation Trust Agreement was initiated and included in the bankruptcy court's Confirmation Order. One function of the Litigation Trust Agreement was to designate how proceeds obtained on behalf of the beneficiaries would be divided.

Steven S. Turoff, as trustee of the Pro-MedCo Recovery Trust, initiated litigation on behalf of the beneficiaries of the trust against several officers and directors, general counsel, an executive employee of the insolvent company, ProMedCo, and Arthur Anderson, ProMedCo's former auditor. The trial court granted several summary judgments which resulted in final judgments in favor of all the defendants. Turoff appealed.[1] Because the Litigation Trust Agreement is a Mary Carter agreement, and because the trial court's order granting summary judgment in favor of Appellees[2] does not violate the Supremacy

Michael P. Fritz, Susman Godfrey LLP, Dallas, J. Greg Coontz, Law Office of J. Greg Coontz, Burleson, Curtis Pritchard, Cleburne, for appellant.

John W. Wright, McDonald Sanders, Ralph H. Duggins, Cantey & Hangar,

1. A dismissal of the appeal against eight of the original appellees was granted by this Court. *Turoff v. McCaslin,* No. 10–04–00144–CV, (Tex.App.-Waco March 30, 2005, order) (not designated for publication).

2. All Appellees remaining in this appeal were parties to the motion for summary judgment on which this appeal is decided.

Clause of the United States Constitution, we affirm.

### MARY CARTER AGREEMENT

◼ In his second issue, Turoff contends the trial court erred in granting Appellees' motion for summary judgment because the Litigation Trust Agreement was not void. Specifically, he argues the Litigation Trust Agreement was not a Mary Carter Agreement.

Appellees asserted in their motion for summary judgment that Turoff had no standing to bring a suit on behalf of the trust beneficiaries because the trust, which was formed through the Litigation Trust Agreement, was a Mary Carter Agreement which was void as against public policy. Appellees argued that the facts of this case fit within the *Elbaor* definition of a Mary Carter Agreement. *Elbaor v. Smith,* 845 S.W.2d 240, 247 (Tex.1992). Appellees argued that, to avoid the comparative negligence statute and to give the appearance that they are not parties at trial, the beneficiaries of the trust had mutually released the claims they had between each other and also released claims against four employees of one of the beneficiaries of the trust, Goldman Sachs. They also argued that Goldman Sachs believed it had a good claim against one of the other beneficiaries, the Bank Group[3], but that Goldman Sachs recognized it was unlikely they would get anything in the liquidation of ProMedCo. So, the argument continued, the Litigation Trust Agreement was created to resolve the disputes between Goldman Sachs, the Bank Group, and ProMedCo.

Appellees also argued that the beneficiaries retained a financial interest in the case against Appellees and that the beneficiaries were required to participate in the trial. According to the Litigation Trust Agreement, the Bank Group contributed $400,000 to fund the trust and would receive the first $800,000 of the proceeds. The participating members, of which Goldman Sachs was one, would receive 47.5% or 40% of the remainder, depending on the circumstances, and the preferred stockholders would receive 47.5% or 55% of the remainder, also depending on the circumstances. The last 5% would go to the holders of allowed unsecured claims other than the Bank Group. Further, the Litigation Trust Agreement provides that the beneficiaries shall cooperate with and assist the trustee, to the fullest extent practicable, with the prosecution of the contributed causes of action, including but not limited to assisting with discovery and document production, trial preparation, and providing testimony.

The trial court agreed with Appellees, granted the summary judgment motion, and decreed that Turoff take nothing against any of the defendants.

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

◼ The classic Mary Carter Agreement exists when the settling defendant retains a financial stake in the plaintiff's recovery and remains a party at the trial of the case. *Elbaor v. Smith,* 845 S.W.2d 240, 247 (Tex.1992). It presents to the jury a sham of adversity between the plaintiff and a settling defendant, while these parties are actually allied for the purpose of securing a substantial judgment for the plaintiff and, in some cases, exoner-

---

**3.** The "Bank Group" is defined in the Litigation Trust Agreement as "each of the members of the Debtors' secured lending group ... electing to participate in the Trust...."

ation for the settling defendant. Id. at 249. These types of agreements tend to promote litigation rather than settle it and distort the trial against the nonsettling defendants. *State Farm v. Gandy*, 925 S.W.2d 696, 709 (Tex.1996). And Texas does not favor settlement arrangements that tend to skew the trial process, mislead the jury, promote unethical collusion among nominal adversaries, and create the likelihood that a less culpable defendant will be hit with the full judgment. *Elbaor*, 845 S.W.2d at 250.

Turoff asks this Court to apply the literal definition established by the Supreme Court in *Elbaor*. But the law on Mary Carter Agreements in Texas has evolved to include agreements that violate the principles laid out in *Elbaor* even if the precise structure of the agreement does not fit the precise pattern of an agreement previously determine to be in violation of public policy. *See J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 332 fn. 6 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Texas Capital Secs., Inc. v. Sandefer*, 58 S.W.3d 760, 768–69 (Tex.App.-Houston [1st Dist.] 2001), *opinion withdrawn in part*, 2001 Tex.App. LEXIS 5004 (Tex. App.-Houston [1st Dist.] July 26, 2001) (pet.denied); *Sage St. Assocs. v. Fed. Ins. Co.*, 43 S.W.3d 100, 105–06 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Coronado Paint Co., Inc. v. Global Drywall Sys., Inc.*, 47 S.W.3d 28, 32–33 (Tex.App.-Corpus Christi 2001), *pet. denied*, 104 S.W.3d 538 (Tex.2003). A strict application of *Elbaor* is not necessary to find a Mary Carter agreement. *See Global Drywall Sys. Inc. v. Coronado Paint Co., Inc.*, 104 S.W.3d 538 (Tex.2003) ("The Court withdraws as improvidently granted its order of March 21, 2002 granting the petition and denying the petition for review.")

The Litigation Trust Agreement is part of the summary judgment evidence. It shows that the beneficiaries, with the Bank Group and Goldman Sachs taking the largest cuts, have a financial stake in the outcome of the suit filed by Turoff and are required to cooperate and assist with the prosecution of the suit. The Litigation Trust Agreement also shows that the beneficiaries mutually released the claims they had with each other and released claims against four individuals. Although technically there may not be settling "defendants" as Turoff claims, the trial process is nonetheless skewed because, as the summary judgment evidence showed, the beneficiaries had claims against each other and against ProMedCo, but settled these claims by agreeing to contribute causes of action to the Litigation Trust while ProMedCo was still in bankruptcy. Further, under this Litigation Trust Agreement, it appears likely that less culpable defendants, a handful of officers and directors and Arthur Anderson, would be hit with the full judgment.

After reviewing the summary judgment under the appropriate standard, we have determined the Litigation Trust Agreement is a Mary Carter Agreement in violation of public policy. Therefore, the trial court did not err in granting Appellees' motion for summary judgment, and Turoff's second issue is overruled.

## SUPREMACY CLAUSE

■ Even though we have determined that the trial court did not err in granting summary judgment, Turoff contends in his first issue that the trial court's order, if given effect, violates the United States Constitution's Supremacy Clause. *See* U.S. Const. Art. VI, cl. 2. Turoff contends that the Supremacy Clause precludes a state law challenge to the validity of the Litigation Trust Agreement. Specifically he argues that the trial court's ruling conflicts with the bankruptcy court's Confirmation Order in that it prevents the full

operation of the Confirmation Order.[4] We disagree.

■■■ The Supremacy Clause invalidates state laws that "interfere with, or are contrary to," federal law. *Hillsborough County, Fla. v. Auto. Med. Labs., Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Under the Supremacy Clause, federal law may supersede, or "preempt," state law in several ways: (1) Congress may preempt all state law in a particular field by express preemptive language; (2) Congress may inferentially preempt all state law in a particular field, in the absence of express preemptive language, when the scheme of federal regulation is sufficiently comprehensive to reasonably infer that Congress has "left no room" for supplementary state regulation; or (3) even where Congress has not displaced state regulation in a particular field, federal law will nullify state law to the extent that they actually conflict. Id. at 713, 105 S.Ct. 2371; *Trice v. State*, 712 S.W.2d 842, 848 (Tex.App.-Waco 1986, writ ref'd n.r.e.). And, state laws can be preempted by federal regulations as well as by federal statutes. Hillsborough County, Fla., 471 U.S. at 713, 105 S.Ct. 2371. The party urging preemption has a difficult burden of overcoming a presumption against preemption. *Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex.2001).

■■■ Turoff argues only conflict preemption. Conflict pre-emption turns on the identification of an "actual conflict," and not on an express statement of preemptive intent. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 884, 120 S.Ct. 1913, 146 L.Ed.2d 914 (U.S.2000). "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941)." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 605, 111 S.Ct. 2476, 115 L.Ed.2d 532 (U.S.1991).

Turoff does not argue that a federal statute or regulation preempts the trial court's ability to determine that the Litigation Trust Agreement is a Mary Carter Agreement that is void as against public policy. He argues, instead, that the trial court's order granting summary judgment stands as an obstacle to the execution of the Confirmation Order. Turoff's arguments are flawed.

First, Turoff does not argue that a federal regulation or statute preempts state law. He argues that a bankruptcy court Confirmation Order, itself, precludes the state trial court from invalidating a litigation trust agreement. He provides no case law to support the concept that a Confirmation Order, pursuant to the Supremacy Clause, preempts a state trial court's decision in litigation that does not relate to the bankruptcy proceeding. We have found none either. He does, however, liken this appeal to a case from Illinois. *See People v. Teledyne, Inc.*, 233 Ill.App.3d 495, 174 Ill.Dec. 688, 599 N.E.2d 472 (1992). *Teledyne* is distinguishable. The order in *Teledyne* was a regulation issued by the Environmental Protection Agency which governed the treatment of contaminated soil and ground water remediation. Id. at 497–98, 174 Ill.Dec. 688, 599 N.E.2d

---

**4.** Appellees argue that Turoff is really making a pitch for a res judicata or collateral estoppel challenge. In his reply brief, Turoff emphatically denies Appellees' contention. Therefore, we will not discuss the applicability, if any, of res judicata or collateral estoppel to the trial court's order and limit our review to the Supremacy Clause issue.

472. The Supreme Court has held that federal regulations issued by an agency have no less pre-emptive effect than federal statutes. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). But the bankruptcy court's Confirmation Order is not a regulation issued by an agency.

Turoff also directs us to a bankruptcy case from New York that he contends is on point. *See In re Thomson McKinnon Securities, Inc.,* 125 B.R. 88 (Bankr.S.D.N.Y. 1991). It is also distinguishable. *McKinnon Securities* involved the preemptive effect of a distribution scheme established under the bankruptcy rules "which, in turn, were promulgated pursuant to 28 U.S.C. § 2075 and were adopted by the United States Supreme Court." Id. at 92, 93. That is not the situation in this appeal. Turoff has made no argument that the specific distribution scheme within the Confirmation Order was established under any of the bankruptcy rules.

In his reply brief, Turoff implies that section 1129 of the Bankruptcy Code is the preemptive statute applicable to this appeal. Section 1129 provides that the bankruptcy court shall confirm a plan under Chapter 11 of the Bankruptcy Code only if, among other conditions not applicable here, the plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). But, in light of his conflict argument, Turoff has failed to explain how the trial court's order stands as an obstacle to the execution of this statute. The statute was executed when the bankruptcy court issued the Confirmation Order.

Second, if the Confirmation Order is a federal law that has preemptive effect in this case, Turoff has not shown that the trial court's order regarding the Litigation Trust Agreement is an obstacle to executing the Confirmation Order. The Confirmation Order provides that "the Contributed Causes of Action shall be, and are hereby deemed to be, ... transferred to and vested with the Litigation Trust ... to be administered by the Litigation Trustee ..." And according to the Litigation Trust Agreement, the sole purpose of the trust is to liquidate the Contributed Causes of Action. One definition of liquidate is "1. To determine by litigation or agreement the amount of (damages or indebtedness)." BLACK'S LAW DICTIONARY 941 (7th ed.1999). Litigation of the Contributed Causes of Action was instituted in state court by the litigation trustee, Turoff. Success in whatever avenue Turoff pursued in liquidating the Contributed Causes of Action was not and could not be guaranteed by the Confirmation Order. The risk of an adverse determination by a state court is simply one of the inherent risks in litigation.

Turoff also argues that federal law determines the validity of the Litigation Trust Agreement, not state law. However, this argument and the supporting case law are not determinative of whether the trial court's order conflicts with the Confirmation Order and thus preempted by federal law.

In analyzing Turoff's arguments on appeal, Turoff has not shown an actual conflict as defined by case law and has not overcome the presumption against preemption. Therefore, the trial court's order is not preempted by the Supremacy Clause of the United States Constitution.

### CONCLUSION

Because our resolution of these two issues is dispositive of the appeal, we need not discuss the remainder of Turoff's issues. *See* TEX.R.APP. P. 47.1. The trial court's judgment is affirmed.

Justice VANCE dissenting from the

judgment with a note.*

---

* "(Because I believe the Trustee has standing in this case and the enforcement of the Litigation Trust Agreement as a Mary Carter Agreement unlawfully interferes with the Confirmation Order of the Bankruptcy Court, I dissent from the judgment affirming the trial court's summary judgment and would reverse and remand the cause for a jury trial.)"