ACCEPTED
01-15-00404-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/12/2015 2:23:04 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00404-CV

In the First Court of Appeals
at Houston, Texas

**MID PAC PORTFOLIO LLC**

**V.**

**PAULA WELCH AND CLYDE ASHWORTH**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

11/12/2015 2:23:04 PM

CHRISTOPHER A. PRINE
Clerk

On Appeal from the 405th Judicial
District Court of Galveston County, Texas
Case No. No. 13CV0422

# BRIEF OF APPELLEES

Mark W. Stevens
SBN 19184300
PO Box 8118
Galveston, TX 77553
409.765.6306
Fax 409.765.6469
Email: markwandstev@sbcglobal.net

ORAL ARGUMENT REQUESTED

November 12, 2015

1

# Contents

Authorities…………………………………………………………………....…3

Overview…………………………………………………………….……5

Request for Oral Argument……………………………………...……6

Procedural History………………………………………………….6

Request for Supplementation…………………………………….……6

Facts……………………………………………………...…………7

       Reply Issue 1—Summary Judgment for Welch and Ashworth was
              properly granted…………………………………….…19
       Reply Issue 2--- The statements of Paula Welch concerning payment
              of taxes was "proper summary judgment evidence."……19
       Reply Issue 3---Summary Judgment was proper because Mid Pac was
              Collaterally stopped to claim that its predecessor ever
              had authority to assert the note or the deed………..…19

Summary of the Argument……………………………….…… 20

Arguments and Authorities……………………………….….. 20

Conclusion…………………………………………………..32

Prayer…………………………………………………..32

Signature…………………………………………………..32

Certificate of Compliance…………………………………..……33

Certificate of Service……………………………..…………33

# AUTHORITIES

## Cases

*Bradford v. Bradford,* 971 S.W.2d 595 (Tex. App.—
Dallas 1998, no pet.)………………………………………….…..23

*Brown v. Brown*, 145 S.W.3d 745 (Tex. App.—
Dallas 2004 , pet. denied)……………………………………..……….29

*Brownlee v. Brownlee,* 665 S.W.2d 111 (Tex. 1984)……………..……..……..26

*Elbaor v. Smith,* 845 S.W.2d 240(Tex. 1992)…………………………...…. 20

*Graebener v. Graebener*, 2012 WL 1143590
(Tex. App.—Houston [1ˢᵗ Dist.] 2012)……………..…………………………..22

*Johnson v. Bethesda Lutheran Homes and Services,*
935 S.W.2d 235 (Tex. App.—Houston [1ˢᵗ Dist.] 1996, no writ)………..……..25

*Mays v. Perkins*, 927 S.W.2d 222, 225 (Tex. App.-
Houston [1ˢᵗ Dist.] 1996, no writ)……………………………………..…..22

*Rizkallah v. Conner*, 952 S.W.2d 580
(Tex. App.—Houston [1ˢᵗ Dist.] 1997, no writ)………..……………………..26

*Rockwall Commons Associates, Ltd. v. MRC Mortgage Grantor Trust,*
331 S.W.3d 500 (Tex. App.—El Paso 2010, no pet.)……………………….…27

*Seals  v. Upper Trinity Reg'l Water District,* 145 S.W.3d 291
(Tex. App.—Fort Worth 2004, pet. dism'd)……………………………………22

*Serna v. Webster*, 908 S.W.2d 487, 492 (Tex. App.—
San Antonio 1995, no writ)……………………………………………………23

*State Farm v. Gandy*, 925 S.W.2d 696, 709 (Tex. 1996)…………...……………20

*Sysco Food Services, Inc. v. Trapnell,*  890 S.W.2d 796 (Tex. 1994)……………31

*Turoff v. McCaslin*, 222 S.W.3d 665 (Tex. App.—Waco 2007)……...…………20-21

## Statute and Rules

Texas Constitution, art. 16a- 50……….…………………………………..25

Tex. Civ. Practice  & Remedies Code Sec. 11.054(1)(A)………………………17

Texas Civil Practice & Remedies Code Sec. 16.004(a)(1)…..…………………23

Texas Civil Practice & Remedies Code Sec. 16.024…………….……………23 ..

Texas Civil Practice & Remedies Code Sec. 16.025…………….……………23

Texas Civil Practice & Remedies Code Sec. 16.035…………….……………..23

Texas Civil Practice & Remedies Code Sec. 16.051…………….……………23

Texas Rule of Appellate Procedure 34.5(b)(4)………...……………………………6

Texas Rule of Appellate Procedure 34.5(c)(1)…………………………………6

Texas Rule of Civil Procedure 120……………………………………….……22

Texas Rule of Civil Procedure 166a(c) ……………………………….…28

Texas Rule of Civil Procedure 166a(i)……………………………………28

Texas Rule of Civil Procedure  736.9………………………………………..30

No. 01-15-00404-CV

In the First Court of Appeals
at Houston, Texas

**MID PAC PORTFOLIO LLC**

**V.**

**PAULA WELCH AND CLYDE ASHWORTH**

On Appeal from the 405th Judicial
District Court of Galveston County, Texas
Case No. No. 13CV0422

**BRIEF OF APPELLEES**

TO THE HONORABLE FIRST COURT OF APPEALS:

> Men have been swindled by other men on many occasions.
> The autumn of 1929 was, perhaps, the first occasion when
> men succeeded on a large scale in swindling themselves.
>
> John Kenneth Galbraith,
> *The Great Crash, 1929*
> Chapter VII, p. 130

Overview

This is a case study in how a "junk" mortgage, unenforceable and previously rejected by courts on multiple occasions, has been being recycled in an attempt to extort money from Appellees who have already been victimized with over 10 years of litigation. The trial court recognized the scam, properly denied what would have been a windfall for Appellant, and granted summary judgment to

Appellees. In purchasing the "deed in lieu" now asserted, Appellant Mid Pac has succeeded only in swindling itself, and the summary judgment should be in all things affirmed.

## Request for Oral Argument

This case presents what appear to be novel questions about the means in which defunct mortgages are being systematically and improperly asserted in Texas Courts. Oral argument may therefore be beneficial, in the discretion of the Court.

## Procedural History

Both parties moved for summary judgment. Appellees moved to supplement their motion for summary judgment and that motion was granted by the court's order at CR 738, attached as Tab D. The trial court granted what was styled a Motion for "default" judgment but denied the requested effect of that judgment by making it clear in the original and amended final judgments, Tabs A and B, that it was not finding implicitly or otherwise that any effective conveyance by the "defaulting" party had been made to Mid Pac.

## Record Supplementation

In its Brief, Mid Pac claims that there is no deed under which Appellees occupied the property in question. In fact, such a deed was filed on March 21, 2014 to correct an earlier omission. However, that filing and the certified copies of the

deed and a subsequent Probate Judgment of muniment of title in favor of Paula Welch, were not included in the Clerk's Record. Supplementation was requested under TRAP 34.5 on November 11, 2015.  At this time, a copy of the 10-page filing of March 21, 2015 is attached hereto as Tab C.

Facts

Appellant's account  of the  facts leaves the impression that Mid Pac was merely the innocent owner of  pristine commercial paper. The truth  is more complex and disturbing.

Appellant never sued on a note.  The basis of  Mid Pac's  suit was a purported "Deed in Lieu of Foreclosure" signed by Defendants Paula Welch and Clyde Ashworth on March 21, 2003 CR 122, 158.   The Deed in Lieu of Foreclosure was given pursuant to a purported compromise and Settlement Agreement attached to Plaintiff's Original and Amended Petitions. CR 85. However, the underlying obligation was a Home Equity Loan, which meant that such transactions were subject to restrictions under the Texas Constitution, art. 16a-50.

Per the  Affidavit of Paula Welch, CR 213, Para. 10, it was impossible to comply with the terms of the purported settlement agreement because any financing company contacted was claimed to have been an "affiliate" of Long Beach Mortgage. Compromise & Settlement Agreement, CR 85 ff. For that

7

reasons, the terms of the agreement were not met, i.e., the required sums were not paid by 5:00 p.m on June 19, 2003.

**IF** the grantee of the deed of trust (i.e., present plaintiff's alleged predecessor in the dim and undocumented past) had any cause of action for possession of the property in question, such cause of action accrued no later than June 20, 2003 and limitations as to enforcement of the deed began to run on that date.

What preceded and followed was reminiscent of Charles Dickens' *Jarndyce v. Jarndyce*.

On December 13, 1999, A suit was filed by Long Beach Mortgage Company as a servicer for Norwest Bank Minnesota NA in Cause No. 99CV1209 in the 122nd District Court. See Documentation, 13 CR 281. According to the Docket sheet and subsequent order, a hearing was held on February 9, 2000. The Court's Docket Sheet entry for that day reads:

> 2-9-00 Hearing conducted (Judy Hansen, Court Reporter).
>
> Application for expedited foreclosure proceeding is denied. F.T.C.

An order to that effect, purporting to deny the application "without prejudice." See Order of March 20, 2000. CR 416.

On February 22, 2000, the same parties –and the same attorneys-- filed a suit against Welch and Ashworth styled "Plaintiff's Original Petition for Judicial Foreclosure" in Cause No. 00CV0173 in the 212th Judicial District Court of Galveston County. CR 419-450.  The Petition included a demand letter from Counsel for Long Beach dated October 19, 1999.  The letter goes on to note that, "…if you fail to pay the total amount due on or before thirty (30) days from the date hereof, Creditor will accelerate amounts owed on your loan secured by the Deed of Trust, declare the entire balance of your loan due and payable without further demand and proceed to judicial foreclosure and sell the property under the terms of the deed of trust and Tex. Const. Art. XVI Sec. 50(a)(6)."  CR 444.

In the Petition in No. 00CV0173,  Long Beach claimed damages in the amount of $270,280.12 (the original amount of the loan was $270,000), and further stated, "*Accordingly, Plaintiff elected to accelerate and mature the Loan Agreement.*"  Exh. 14, Original Petition, p. 3, CR 421.  This commenced limitations for purposes of the four year limitation statute governing suits on **notes**, although it does not appear that at any time Mid Pac has attempted to enforce the note itself.

The Docket Sheet in No. 00CV0173 reflects that a status conference was set for May 25, 2000. However, on July 20, 2000, an order of Dismissal without

prejudice was entered at the behest of Plaintiff Long Beach. Docket Sheet and Order of 7/20/2000. CR 450.

On March 6, 2000, Norwest Bank Minnesota, acting through the same counsel as previously involved, filed suit against Defendants in Cause No. 00CV0222 in the 122nd District Court, again seeking "expedited" foreclosure and again reciting that the debt had been accelerated. CR 452 ff. At the Petition p. 2, Para. 6, CR 453, Norwest stated, "On October 15, 1999, Applicant gave the requisite 30 day demand to cure the default and notice of acceleration of maturity of the debt as provided for under the Security Instrument, Tex. Prop. Code Sec. 51.002, and applicable law." The petition was verified by Raymond Agostini, Vice president and "default manager" of Norwest. However, on March 20, 2000—about two weeks after filing—the same suit was dismissed "without prejudice." See Exhibit 22, final page. CR 468.

On March 10, 2000, a suit seeking foreclosure was again filed –even while the previous suit was pending—in No. 00CV0241, CR 472, in the 212th District Court. The docket Sheet, CR 472 shows that a hearing originally set for May 26, 2000 was reset to May 31, 2000. The 212th District Court also denied relief. CR 488.

Next, the lawsuit which gave rise to the "deed in lieu" asserted in the present case was filed on April 24, 2000 in the 56th District Court in No. 00CV0409 by

Welch and Ashworth against Long Beach Mortgage d/b/a Financing USA, Docket Sheet, CR 499 (Nonsuit). Long Beach counterclaimed and thus the issue was joined.

The purported settlement agreement and Deed in Lieu of Foreclosure were signed on March 21, 2003. CR 494 ff. Certain claims were dismissed following the execution of the Compromise Agreement and "Deed in Lieu". See entry of 3/24/2003, CR 499-500, reciting agreed motions of partial dismissals. The Court's final order of May 9, 2008 (the day after Judge Ellisor's final order in No. 06CV0224), makes clear that the Agreed Order of March 24, 2003 dismissed Ashworth and Welch's lawsuit in its entirety with prejudice, and dismissed Long Beach Mortgage Company d/b/a Financing USA's counterclaims against Ashworth and Welch with prejudice. CR 494. Those orders of March 24, 2003 were "not affected" by the Court's order of May 9, 2008. CR 499. However, the Order of May 9, 2008 in No. 00CV0409 did dismiss "without prejudice" the remaining "breach of contract" claims of Long Beach Mortgage d/b/a Financing USA, apparently at the Motion of Long Beach.

When Welch and Ashworth signed the Settlement Agreement and "Deed in Lieu" on March 21, 2003, they had no way of knowing the "shell game" that was beginning. As Paula Welch testifies in her affidavit, Exh. 1,Para. 11, 11A, 12, CR 213-14, the settlement required that Welch and Ashworth obtain financing to take

11

out the "note" from an entity that was not "affiliated" with Long Beach. In the 90 day refinancing window, Welch and Ashworth learned that Long Beach claimed that a financing company with whom they were dealing was "affiliated" with Long Beach and thus was not available as a lender. This was exactly the kind of gambit which was sought to be avoided by constitutional and statutory provisions requiring that home equity mortgages be foreclosed only by judicial order.

Clyde Ashworth filed a proceeding in Bankruptcy on June 19, 2003. CR 257 When that proceeding was dismissed on or about November 12, 2003 (Entry 48, final page, CR 262), a joint proceeding was filed the next day by both Paula Welch and Clyde Ashworth in No. 03-46247, See Exh. 9, first entry. CR 264.

That proceeding, however, was also eventually dismissed on September 28, 2004. See Exh. 9, PACER docket Sheet, Entry No. 79, final page. See bankruptcy Docket Sheets, CR 268. The last date on which either Welch or Ashworth were under bankruptcy protection would have been September 28, 2004. See , Bankruptcy PACER docket sheet, Item 79, Order on Trustee's Motion to Dismiss, CR 268.

It was not over. On February 24, 200**6**, Citigroup Global Markets Realty Corp. (i.e., "CGMRC" the entity from whom Mid Pac claims to have purchased the paper in question), filed a suit seeking foreclosure against Welch and Ashworth in Cause No. 06CV0224, in the 122nd District Court. Per the Docket Sheet, CR 330 ff

and related documents. The issues were joined, hearings conducted, and on March 28, 2008, Judge Ellisor denied the application for foreclosure precisely because GCMRC could not establish its "title" to the deed or note.  CR330-333 . CGMRC sought leave to take additional time to obtain such proof. CR 337-38, lamely *requesting  "…additional time to locate documents to prove that it is the proper applicant."*  CR 338.

On May 8, 2008, Judge Ellisor of the 122nd District Court entered an order denying rehearing and confirming his original dismissal of CGMRC's suit.  CR 355.  Cf. the Court's emphatic docket sheet entry, CR 359 ("DENIED").  Thus, as of May 8, 2008, GCMRC apparently could not even locate the paperwork necessary to demonstrate its authority with respect to the deed or the property now in question.,

As noted, there was no further action in No. 00CV0409 following the dismissal of both bankruptcies and the lifting of the automatic stay in bankruptcy. The last act in No. 00CV0409 was the order of the Court dismissing the contract claims of Long Beach "without prejudice" on May 9, 2008. CR 494  From that date to the date of filing of the present suit, March 13, 2013,  **four years and 307 days elapsed.**  From the date of accrual (at latest, June 20, 2003, at which time possession was to have been relinquished) to the date of filing (March 18, 2013), a period of **nine years 271 days days elapsed.**

CGMRC attempted to salvage something by selling---for an undisclosed consideration --- the mortgage package to Mid-Pac. See "Purchase Agreement " Exh. 27, CR 505, 532 ff, with price redacted. Now Mid Pac is attempting to enforce the same deed when that relief was specifically denied almost six years ago, i.e., May 8, 2008, , CR 355.

For Mid Pac, the critical and unresolved problem was that there was no chain of title from any incarnation of "Long Beach" mortgage to Mid Pac, and in particular no indication of how "Long Beach" bequeathed the deed in lieu to Wells Fargo or subsequently to GCMRC or Mid Pac. That problem led to an embarrassing admission—which defeats any summary judgment in favor of Mid Pac and which supports the summary judgment in favor of Welch and Ashworth:

> 19. When Mid Pac Portfolio acquired the home equity loan from Citibank, it also acquired any interest that Wells Fargo **may** have under the Deed in Lieu executed by Paula Welch and Clyde Ashworth. Consequently, there exists a **genuine controversy** between Mid Pac Portfolio and Wells Fargo as to whether Mid Pac Portfolio or Wells Fargo is the actual owner of the property under the Deed in Lieu.

Original Petition of Mid Pac, Para. 19, CR 8-9. (emphasis added).

In short, Mid Pac and Wells Fargo did not know who the owner of the deed was, or what interest if any Wells Fargo "may" have had under the "deed in lieu"—and they could not find out.

14

It wasn't for want of trying. The record also reveals that a lawsuit in Dallas, removed to federal court, resulted in an agreed judgment to the effect that Akin Gump Hauer & Feld LLP, counsel for J P Morgan Chase Bank, NA, was to "…immediately turnover [sic] the original Deed in Lieu … to Michael Burns…" Federal Judgment, CR 664. That deed, if indeed it was turned over, is absent from the record in this case, although in candor Counsel for Mid Pac has stated in court in this case that he has the deed in lieu in his safe in the Dallas area.

The "stipulation" between Mid Pac and CGMRC, CR 502 is an audacious document—not a thing done in a corner, but in broad daylight.

The "Stipulation", CR 502 purports to disclaim any right, title or interest to the Deed in Lieu which Mid Pac is asserting. (Para. 2). This does not cure the underlying defect, i.e., that CGMRC and Mid Pac cannot produce an instrument giving it **title** to property question. The *ipse dixit* of any affiant to that effect would simply be an inadmissible "opinion of belief, i.e., a pure legal conclusion.

The "Stipulation" goes on to "consent" to a judgment against itself in favor of Mid Pac, "…**providing** that [CGMRC] sold and transferred its interest in the Deed in Lieu to Mid Pac Portfolio, LLC provided that the judgment as to Citgroup Global Markets Realty Corp is IN REM only." CR 502 (emphasis added). Mid-Pac and its counsel in this case were thus doing the bidding of CGMRC, and

15

asking the courts to do the same even though the 122nd District Court denied any relief in 2008.

This "stipulation" in paragraph 7t provides further that "…Mid Pac Portfolio LLC agrees not to pursue, and waives the award of, any monetary damages, attorney fees, court costs or discovery against CitiGroup Global Markets Realtiy Corp, but not against any other defendant in this case."

Also before the court was an email dated February 26, 2013 between Mid Pac's counsel at trial and on this appeal-- Mike Burns-- and Mr. Nathan Vaccaro of Wells Fargo. That document, CR 764, demonstrates that a Special Warranty **Deed** from Wells Fargo had been requested and apparently was not forthcoming. There Mr. Burns stated:

> I will have to record the Deed in Lieu into Wells [Fargo] name and start a quiet title suit to transfer the title into Mid-Pac's name. I'll have to name Wells Fargo as a Defendant. I hope you'll be able to file a disclaimer in the suit and get out of it without it getting too complicated….Will your office accept service of the suit?

Thus, the subsequent "default" judgment was a sham, intended to somehow substitute a collusive "stipulation" for a Special Warranty Deed which Wells Fargo could not provide.

CGMRC had been "thrown out" of court in No. 06CV0224 when the basis of its own claimed assignment was challenged. For that reason, CGMRC would be potentially subject to sanctions as a vexatious litigant if it were determined that it

16

had on five occasions   filed a suit which had been "finally determined adversely to the plaintiff". See Tex. Civ. Practice  & Remedies Code Sec. 11.054(1)(A).   The packet containing the "assignment" of the "deed" in question  had the other items redacted—suggesting that this suit is potentially only one of many such abusive salvage operations by Mid Pac and the vendors of dubious paper.

Thus,  CGMRC simply purported to "assign" a deed Mid Pac.  The assignment, CR 51, contains no property description, no words of conveyance or *habendum* clause, and in short is completely ineffective as a conveyance of title to real property.

GGMRC apparently thought—along with Mid Pac—that it could avoid exposure to attorneys fees, possible sanctions, and embarrassing discovery by simply not filing an answer in the normal form. However, by offering testimony in the form of an affidavit, i.e., the "stipulation", and especially by consenting to any outcome, CGMRC has entered a general appearance and is before this Court for all purposes. See below at p. ***  The conduct of GCMRC and Mid Pac raise serious policy questions as the devices used in this suit  and generally to resurrect defunct loans.

The trial court  refused to give effect to the bogus stipulation madquerading as a default judgment .  The Final Judgment and Amended Final Judgment, Tabs A and B hereto, contain the same limiting language:

> The Motion of Mid Pac for a Default Judgment as against Citigroup Global Markets Realty Corp. is Granted to the extent only that Citigroup Global Markets Realty Corp. has at this time no right, title or interest in the Deed in Lieu of Foreclosure or the property described therein and further provided that the Court does not thereby rule implicitly or otherwise that any effective conveyance by Citigroup Markets Realty Corp. or Wells Fargo NA of the Deed in Lieu or property described therein  to Mid Pac Portfolio, LLC has taken place at any time.

In short, CGMRC could relinquish or "quitclaim" any interest it had in the deed—but CGMRC and Mid Pac could not enter into a collusive "stipulation" which would bind Appellees—or Texas Courts.

Why these maneuvers?  The answer is that even the weakest  claims have some extortion value where the defendants' homestead is involved.  The Affidavit of Marcie Schoudt , generated in earlier litigation c. July of 2011, shows what is going on . At that time, Ms. Schoudt concluded based assessed value upon local tax rolls  for the property in question was about $395,380.  CR 645.  As noted, Appellant Mid Pac declined to reveal the amount paid for either the "package" relating to this property or any other properties.  CR 505 , 532 ff,  with  price redacted.  With arithmetic like that, Mid Pac and similar entities could profit if just one suit out of many "panned out."

One final odor attaches to Mid Pac's dealings.  In February of 2013, Ms. Welch and Mr. Ashworth received an IRS 1099 form which advised in substance that they were being credited with $ 268,893.72  in connection with the home in

question. See Tab E, CR 549-553. Mid Pac responded with an affidavit of one April Smith, CR 562-563, which admitted that Mid Pac sent the 1099 and which attempted to explain it away as an "REO" i.e., "…a term used in the mortgage lending industry to mean "Real Estate Owned" which is property that has been acquired by lenders through the foreclosure process which includes a Deed in Lieu."

That statement –which is purely a legal conclusion—misses the point entirely. The effect of the 1099 was to impose on Appellees a recognize gain of over $268,000. **Mid Pac** had written off the note as uncollectible and were placing on appellees the burden of recognized gain with respect to the IRS.

<u>Reply Issue 1</u>
Summary Judgment for Welch and Ashworth was
properly granted and Summary Judgment for
Mid Pac was properly Denied

<u>Reply Issue 2</u>
The statements of Paula Welch concerning payment of taxes
was proper summary judgment evidence.

<u>Reply Issue 3</u>
Summary Judgment was proper because Mid Pac was
Collaterally stopped to assert that its predecessor
Ever had standing to assert the note or deed.

Summary of the Arguments

There was no evidence of any chain of title from the original grantee under the "deed in lieu" to Mid Pac. The "assignment" which Mid Pac attempted to cure that defect does not substitute for a conveyance of realty and in any event is unenforceable as contrary to public policy. Mid Pac is collaterally stopped particular the fact that its predecessor did not have standing was determined adversely to CGMRC in Cause No. 06CR0224 in the 122nd District Court, approximately 5 years before the present suit was filed. Mid Pac and CGMRC are in violation of many fundamental principles of property and procedural law, leading to the grounds which required summary judgment in favor of the Appellees Welch and Ashworth:

ARGUMENTS AND AUTHORITIES

Under Issue 1—Summary Judgment Was Properly Granted to
Appellees Welch and Ashworth and Summary Judgment as to Mid Pac
Was properly denied.

Appellees will summarize the arguments made below both in opposition to Mid Pac's Motion for Summary Judgment and in support of their own Motion for Summary Judgment.

**Ground I—Void "Mary Carter" Assignment Unenforceable**-- The "assignment" under which Mid Pac claims is unenforceable because it violates the considerations invalidating so-called "Mary Carter" Agreements. This suit was a

collusive effort between Mid Pac and Citigroup Global Markets Realty Corp. ("CGMRC") to revive a claim that was previously rejected by the 122nd District Court in Galveston County, Texas. (final order of denial, May 8, 2008), CR ***. The "stipulation" which makes it clear that CGMRC, having failed once in Galveston County Courts to enforce its deed, simply purported to "assign" the deed and mortgage package to a straw holder (Mid Pac) in an effort to seek more favorable justice in another court.

The "assignment" of claims is prohibited when that assignment skews the administration of justice. A classic "Mary Carter" agreement exists where a settling defendant retains a financial stake in the Plaintiff's recovery and remains a party at the trial of the case. *Elbaor v. Smith,* 845 S.W.2d 240, 247 (Tex. 1992). So called "Mary Carter" agreements are banned because they tend to promote litigation rather than settling it, and distort the trial process against defendants. *State Farm v. Gandy*, 925 S.W.2d 696, 709 (Tex. 1996).

However, the concept of Mary Carter agreements has grown far beyond the original mold. In *Turoff v. McCaslin*, 222 S.W.3d 665 (Tex. App.—Waco 2007) a "litigation trust" agreement was denied enforcement because it violated public policy and in particular Mary Carter principles. The Waco Court of Appeals explained:

> Turoff asks this Court to apply the literal definition established by the Supreme Court in *Elbaor*. But the law on Mary Carter Agreements in

21

> Texas has evolved in include agreements that violate the principles laid out in *Elbaor* even if the precise structure of the agreement does not fit the precise pattern of an agreement previously determine[d] to be in violation of public policy.

*Turoff, supra*, 222 S.W.3d at 666, citing cases.

The Litigation Trust Agreement in *Turoff* showed that the beneficiaries took the "largest cut" of any proceeds and thus had a financial stake in the outcome of the suit filed by Turoff. The agreement required those parties to assist *Turoff* in prosecution of the suit, and mutually released claims against one another.

The "assignment" in the present case attempts to accomplish analogous improper goals. For a consideration which is unstated—and which Plaintiff Mid-Pac refuses to disclose -- Mid Pac is attempting to "enforce" the deed while attempting to allow CGMRC to stand off at a distance—and attempting to enforce a recent "stipulation" which purports to insulate CGMRC from the consequences of filing suit for relief which it was denied over 5 years ago in Cause No.06CV0224, May 8, 2008, CR ***.

The "Default Judgment" Ruse

Despite the claim by Mid-Pac that CGMRC is a defaulting defendant, the very fact of that "stipulation" constitutes a general appearance in this court for all purposes. Tex. R. Civ. P. 120; *Mays v. Perkins*, 927 S.W.2d 222, 225 (Tex. App.-Houston [1st Dist.] 1996, no writ). A party offers testimony has entered a general

appearance. *Graebener v. Graebener*, 2012 WL 1143590 *2 (Tex. App.—Houston [1ˢᵗ Dist.] 2012), citing *Seals v. Upper Trinity Reg'l Water District,* 145 S.W.3d 291, 296-97 (Tex. App.—Fort Worth 2004, pet. dism'd)(examining witnesses or offering testimony constitutes general appearance); *Bradford v. Bradford,* 971 S.W.2d 595, 598 (Tex. App.—Dallas 1998, no pet.)(same); *Serna v. Webster*, 908 S.W.2d 487, 492 (Tex. App.—San Antonio 1995, no writ)(same).

**Ground II—Limitations--** Limitations under TCPRC Secs. 16.035(a); 16.024; 16.004(a)(1) and 16.051 were all asserted in Appellees' Motion for Summary Judgment at CR 189. The Court permitted amendment (Tab D, CR 738) to assert limitations under the five year provision of TCPRC 16.025, as well as collateral estoppels.

A "deed" of any kind has to be enforced within 4 years of breach of surrender of the property. Mid-Pac's suit is barred by limitations under the three year statute of limitations found at TCPRC Sec. 16.024; the general four year statute of limitations found at Texas Civil Practice and Remedies Code Sec. 16.004(a)(1), or the Residual Statute of Limitations found at Texas Civil Practice and Remedies Code Sec. 16.051. Additionally, an executor contract for the conveyance of realty must be brought within four years of the date of accrual. TCPRC Sec. 16.035(a).

**Ground III—No Chain of Title from Original Recipient of Deed/TRCP 166a(i).** You can't buy something from somebody if they don't own it. Mid Pac claims "assignment" from another entity-- Citigroup Global Markets Realty Corp. or "CGMRC"—which cannot prove their title back to the original recipient of the deed. There is no instrument—and hence no evidence under TRCP 166a(i), specifically raised at CR 189, before the court which records title or ownership of the property, the deed, or indeed the mortgage and note from Citi Bank or any other entity into CGMRC, and thus CGMRC's purported "assignment" to Mid Pac is without substance. Indeed, there appears to be no deed, assignment or other conveyance from Washington Mutual ("WaMu") into Citi Bank. Additionally, there is NO conveyance in the record from the "Citi Group" entity which may have received a conveyance at some time into the CGMRC entity which purports to have assigned the deed and cause of action to Mid-Pac.

**Ground IV—Illegality--** The "deed in lieu" was illegal and unenforceable on at least two counts. First, it was obtained in settlement of a Home Equity Loan Mortgage in violation of both that Mortgage's terms and the Texas Constitution, Art. 16-50A, because the only way a Home Equity Loan can be enforced is through a **judicially supervised** foreclosure. See Note, Exhibit 5, Para. 20 ("The lien evidenced by this security instrument may be foreclosed only by court order."), CR ***. There is no evidence, TRCP 166a(i), that any court specifically

24

approved the so-called Compromise Settlement Agreement, or even knew of its existence or terms.

Second, at the inception  the "loan" underlying the deed of trust was improperly modified at closing .See Tab C, Affidavit of Paula Welch, Para. 14, CR 221.  In effect, Appellees were "shorted" about $8,000 at closing, defeating the entire purpose of the home equity loan in 199.  This constituted "Fraud" in the extension of home equity credit, mandating a forfeiture of all principle and interest under the Texas Constitution, art. 16a-50.

### Argument and Authorities under Reply Issue 2
The statements of Paula Welch concerning payment of taxes
was proper summary judgment evidence.
(

### The Five Year Statute of Limitations and Payment of Taxes

The five year statute under TCPRC Sec.16.025 was pleaded in Appellees' Original Answer, CR 52;  Discussed at length in Mid Pac's Motion for Summary Judgment, CR 129 ff; Appellees Motion to Amend, CR 692, and Defendants' Response to Mid Pac's Supplemental response , 4/15/15, CR 725.

Before the trial court, Appellee Welch submitted and affidavit and supporting documents demonstrating that she had paid taxes through escrow accounts containing her money for some of the years in question.   Mid Pac

25

concedes that error was not preserved, yet at pp. 19 and 21 ff. of its Brief challenges Ms. Welch's affidavit regarding taxes as being *"conclusory"* and hence one that can be challenged on appeal without having made any effort to do so in the trial court.

The flaw in Mid Pac's challenge is a misreading of what "conclusory" evidence actually is, and what the requirements are—and are not—under Tex. R. Civ. P. 166a (c). Various courts have often commented on the frequent—and frequently belated—claims that an affidavit is "conclusory. See, e.g., *Johnson v. Bethesda Lutheran Homes and Services,* 935 S.W.2d 235 (Tex. App.—Houston [1st Dist.] 1996, no writ):

> An oft-repeated objection to summary judgment evidence….is that it is conclusory. There is much confusion about what this objection means. It does not mean that logical conclusions based on stated underlying facts are improper. **That type of conclusion is proper in both lay and expert testimony.** What is objectionable is testimony that is nothing more than legal conclusions. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex. 1984). To allow such testimony is to invade the province of the fact finder, which is the sole arbiter of what used to be known as "ultimate issues," or issues that by their legal consequences control the disposition of the case…..

935 S.W.2d at 239 (Hedges, J., concurring)(emphasis added).

The affidavit of Ms. Welch regarding payment of taxes was exactly what the boldfaced language contemplated, i.e., logical conclusions based on stated underlying facts.

This case is to be distinguished from situations where bald assertions of legal conclusions are found to be inadequate for summary judgment or other purposes, e.g., *Rizkallah v. Conner*, 952 S.W.2d 580, 588 (Tex. App.—Houston [1st Dist.] 1997, no writ)(bare conclusions laying blame on car's condition on actions by the owner).

See *Rockwall Commons Associates, Ltd. v. MRC Mortgage Grantor Trust,* 331 S.W.3d 500 (Tex. App.—El Paso 2010, no pet.). Rockwall first noted that a complaint that an affidavit is not "clear, positive, direct, etc…" must be made before the trial court, or is waived. 331 S.W.3d at 507. Here, Mid Pac attempts to evade that clear principle my mischaracterizing Ms. Welch's supplementary affidavit as "conclusory".

*Rockwall* further noted that items such as contracts are admissible because, "…as contracts, they have legal effect independent of the truth of any statements contained therein and are not hearsay." 331 S.W.3d at 511.

In *Rockwall*, the trial court had overruled complaints that affidavits were "conclusory" and the matter was asserted as error. The El Paso Court of Appeals rejected that challenge, noting first that, "Conclusory statements are not susceptible to being readily controverted…" 331 S.W.3d at 512. As noted above, Mid Pac was able to controvert the affidavit of Ms. Welch regarding the source of tax payments, but made no effort to do so.

Further, in *Rockwall* the challenged affidavit was accompanied by ample documentation—just as in the present case. The affidavit was therefore not "impermissibly conclusory." 331 S.W.3d at 513.

Mid Pac ignores Tex. R. Civ. P. 166a(c)(final sentence):

> … A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion of testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies and could have been readily controverted.

Mid Pac did not controvert Ms. Welch's claims—or even to try to do so. **Why not?** Exhibit 27 to Defendant's Motion for Summary judgment, CR *** is a lengthy document summarizing the agreement of purchase between Mid Pac and CGMRC, and describing in detail Mid Pac's access to the underlying papers of the note and deed of trust. If the funds used to pay taxes were other than those belonging to Defendants, Mid Pac would have access to that knowledge, or could discover it if it knew who actually "owned" the deed. Simply put, the affidavit of Ms. Welch regarding payment of taxes was admissible under TRCP 166a(c), quoted above, and Mid Pac simply failed to controvert it.

Mid Pac's argument against application of Sec. 16.025 amounts to an assertion that the taxes had to be paid <u>directly</u> by Defendants, and that taxes paid with defendants' money in escrow somehow do not satisfy the statute. This argument cannot be derived from the wording of Sec. 16.025.

Mid Pac's argument flies in the face of ordinary commercial practice, as reflected in the original deed of trust, Defendant's MSJ Exhibit 5, and literally millions of others like it. Taxes on encumbered property are invariably paid by the note holder, using funds of the owner/borrower. Lenders as a class—and their downstream confederates such as Mid Pac-- would certainly not contend that the borrower had not paid taxes under this arrangement if title were challenged by a third party and the lender's interest had to be defended by application of the five year statute.

The only case cited by Appellant in its challenge to Ms. Welch's supplementary affidavit on taxes is *Brown v. Brown*, 145 S.W.3d 745 (Tex. App.—Dallas 2004, pet. denied). *Brown* did hold that defects in substance need not be preserved. However, in that case the appellant was challenging the trial court's disallowance of his own expert's affidavit, which (1) did not attach any supporting documents, and (2) was excessively vague in alleging professional malpractice without stating with precision exactly what the accused attorney had done

incorrectly. *Brown, supra,* 145 S.W.3d at 751-52. That was, of course, a classic example of a truly conclusory and non – probative affidavit.

Here, however, Ms. Welch's affidavit attached properly certified records of the taxing authorities, and was more than specific in stating establishing that the monies paid could only have come from *her* escrowed funds.

Mid Pac claims that no deed is in the record. In fact, the "deed" under which Appellee Paula Welch has occupied the house was omitted in her affidavit regarding payment of taxes, CR 665, but was supplemented by an additional affidavit on March 21, 2014. That second affidavit with attachments was not included in the original clerk's record but a supplementation has been requested under TRAPs 34.5(b)(4) and 34.5(c)(1). For convenience, a copy of that supplementary affidavit and attachments (deed and order probating will as muniment of title) are attached to this Brief as Tab C.

Mid Pac also overlooks that the Deed of Trust attached to its original and amended pleadings could not ad would not have been entered into had Appellees, or at least one of them, occupied the house under color of title since at least 1999. If it were otherwise, the Deed of Trust and associated documents would be even more worthless.

Summary Judgment was proper because Mid Pac was collaterally
estopped to claim that its predecessor ever had authority to
assert the note or the deed

Mid Pac misapplies TRCP 736.9, which is cited at Mid Pac's Brief, pp. 19 ff for the proposition that the order of the 122nd District Court in Case No. 06CV0224 has no collateral estoppel effect. First, in the context of TRCP 736, the "order" referred to is an "order" for foreclosure. The precise basis of the Summary Judgment motion filed by Defendants' prior counsel was that Citigroup Global Markets Realty Corp. (CGMRC) lacked standing. See Defendants' MSJ Exhibit 14, CR 330. When CGMRC was granted leave to present additional evidence on the issue of standing and attempted to do so, the 122d District Court adhered to its earlier ruling to the effect that CGMRC had no standing.

Mid Pac necessarily claims that it is in privity of title with GCMRC. However, in the earlier proceeding in the 122nd District Court, 878GCMRC could not prove standing. That issue was fully and fairly litigated, *Sysco Food Services, Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex. 1994). A party suing on a note or for foreclosure of a deed of trust must certainly, as a matter of minimal due diligence, assure itself that it actually may assert such documents in court.

Collateral estoppel does not bar litigation of issues arising after the first suit. However, nothing of probative force happened in the six years since GCMRC

31

suffered a dismissal in the 122nd District Court.  No deed from GCMRC to Mid Pac or any other entity was ever placed into evidence.  The "stipulation" on which Mid Pac relies was  not probative of any fact except relinquishment of one entity to any claim in the property; it did not confer title on Mid Pac directly or indirectly, and the trial court properly and carefully refused to give such effect to it.

## Conclusion

Mid Pac was either a knave or a fool. If Mid Pac filed suit knowing of the infirmities described above, it was the former.  If it bought the "package" without even checking for a chain of title or consulting online records to determine any litigation, the latter.   In either case, Mid Pac has only itself to blame for urchasing worthless paper and may not mitigate its loss by defying Texas' historic  protection of homesteads.

## Prayer

Appellees Paula Welch and Clyde Ashworth accordingly pray that the Summary Judgment be in all things affirmed.

Respectfully submitted,
*/s/ Mark W. Stevens*
Mark W. Stevens
TBN 19184300
PO Box 8118
Galveston, TX 77553
409.765.6306
Fax 409.765.6469
Email: markwandstev@sbcglobal.net
Counsel for Appellees

32

## Certificate of Compliance

The Foregoing instrument contains  6,228words in Times New Roman 14 point font double spaced, with extended quotations in single space.

*/s/ Mark W. Stevens*
Mark W. Stevens

## Certificate of Service

A true and correct copy of the foregoing instrument was served via efiling on Mr. Mike Burns at [burnslaw@outlook.com](mailto:burnslaw@outlook.com) on November 12,  2015.

*/s/ Mark W. Stevens*
Mark W. Stevens

## Exhibits

A     Final Judgment

B     Amended Final Judgment

C     Filing of Deed of Paula Welch

D     Order on Motion to Supplement MSJ

E     Form 1099's and transmittal envelops

13–CV–0422
DCJUFNJ
Judgment – Final – Non Jury – OCA
1018557

No. 13CV0422



| | |
|---|---|
| MID PAC PORTFOLIO LLC | IN THE 405TH DISTRICT |
| VS. | |
| PAULA WELCH, CLYDE ASHWORHT and WELLS FARGO BANK, NA AS TRUSTEE FOR SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. FLOATING RATE MORTGAGE PASS THROUGH CERTIFICATES SERIES 1999-LBI | COURT OF GALVESTON. COUNTY, TEXAS |

## FINAL JUDGMENT

The Court, having considered the Motion for Summary Judgment of Plaintiff Mid Pac Portfolio LLC ("Mid Pac") and the Motion and Amended Motion for Summary Judgment of Defendants and Counter Plaintiffs Paula Welch and Clyde Ashworth (collectively, "Welch and Ashworth") and respective objections thereto, rules as follows:

The Motion for Summary Judgment of Mid Pac Portfolio LLC is hereby OVERRULED.

The Motion for Summary Judgment and Amended Motion for Summary Judgment of Welch and Ashworth is GRANTED.

The Motion of Mid Pac for a Default Judgment as against Citigroup Global Markets Realty Corp. is Granted to the extent only that Citigroup Global Markets Realty Corp. has at this time no right, title or interest in the Deed in Lieu of Foreclosure or the property described therein and further provided that the Court

1

COMPLETED

does not thereby rule implicitly or otherwise that any effective conveyance by Citigroup Markets Realty Corp. or Wells Fargo NA of the Deed in Lieu or property described therein to Mid Pac Portfolio, LLC has taken place at any time.

It is therefore Ordered, Adjudged and Decreed that Mid Pac Portfolio LLP take nothing from Paula Welch and Clyde Ashworth.

It is further ordered, adjudged and decreed and declared that the "deed in lieu of foreclosure" which was filed of record on March 14, 2003 under Instrument Number 2013015526 in the deed records of the County Clerk of Galveston County, Texas and describing the property contested, the legal description of which is:

> Lot One Hundred (100) of THAMAN'S FIRST SUBDIVISION in the East ½ of the Mary Austin League, located in Galveston County, Texas according to the map or plat thereof recorded in Volume 231, Page 6, in the office of the County Clerk of Galveston County, Texas.

is unenforceable and barred from any further effort to enforce the same by any person, firm or entity purporting to have title to the subject property through such deed from any source, including but not limited to Mid Pac Portfolio LLC; Wells Fargo Bank N.A. as Trustee for Salamon Brothers Mortgage Securities VII, Inc., Floating Rate Mortgage Pass through Certificates Series 1999-LBI; or Citigroup Global Markets Realty Corp.

It is further Ordered, Adjudged and Decreed that Paula Welch and Clyde Ashworth shall have and recover of and from Mid Pac Portfolio LLC the following:

A. $ _5,208^{00}_ for attorneys fees before the trial court and through and including the date of this Judgment;

2

B. $ _2,500_⁰⁰__ In the event a notice of appeal is filed herein and Defendants Welch and Ashworth or either of them ultimately prevail on such appeal; and

C. $ _1,500_⁰⁰__ In the event that either party shall file a petition for review with the Supreme Court of Texas and such petition for review is granted and further in the event that Welch and Ashworth prevail in such proceeding.

D.    all taxable costs of court,

E.    Postjudgment interest at the statutory rate of 5.0 percent per annum on attorneys fees state above from the date of entry herein;

FOR WHICH SUMS LET EXECUTION ISSUE.

Any relief not specifically granted herein is DENIED.

This judgment disposes of all issues and all parties and is a FINAL AND APPEALABLE JUDGMENT.

Signed April 2 , 2015.

Michelle Slaughter
District Judge

3

*B*

13 – CV – 0422
DCAMFJ
Amended Final Judgment
1022767

*3*

No. 13CV0422

15 APR 14 PM 3: 16

DISTRICT CLERK
GALVESTON COUNTY, TEXAS

MID PAC PORTFOLIO LLC

IN THE 405TH DISTRICT

VS.

PAULA WELCH,
CLYDE ASHWORHT and
WELLS FARGO BANK, NA
AS TRUSTEE FOR SALOMON
BROTHERS MORTGAGE
SECURITIES VII, INC. FLOATING
RATE MORTGAGE PASS
THROUGH CERTIFICATES
SERIES 1999-LBI

COURT OF GALVESTON.

COUNTY, TEXAS

## Amended FINAL JUDGMENT

The Court, having considered the Motion for Summary Judgment of Plaintiff Mid Pac Portfolio LLC ("Mid Pac") and the Motion and Amended Motion for Summary Judgment of Defendants and Counter Plaintiffs Paula Welch and Clyde Ashworth (collectively, "Welch and Ashworth") and respective objections thereto, rules as follows:

The Motion for Summary Judgment of Mid Pac Portfolio LLC is hereby OVERRULED.

The Motion for Summary Judgment and Amended Motion for Summary Judgment of Welch and Ashworth is GRANTED.

The Motion of Mid Pac for a Default Judgment as against Citigroup Global Markets Realty Corp. is Granted to the extent only that Citigroup Global Markets Realty Corp. has at this time no right, title or interest in the Deed in Lieu of Foreclosure or the property described therein and further provided that the Court

1

842

does not thereby rule implicitly or otherwise that any effective conveyance by Citigroup Markets Realty Corp. or Wells Fargo NA of the Deed in Lieu or property described therein to Mid Pac Portfolio, LLC has taken place at any time.

It is therefore Ordered, Adjudged and Decreed that Mid Pac Portfolio LLP take nothing from Paula Welch and Clyde Ashworth.

It is further ordered, adjudged and decreed and declared that the "deed in lieu of foreclosure" which was filed of record on March 14, 2003 under Instrument Number 2013015526 in the deed records of the County Clerk of Galveston County, Texas and describing the property contested, the legal description of which is:

> Lot One Hundred (100) of THAMAN'S FIRST SUBDIVISION in the East ½ of the Mary Austin League, located in Galveston County, Texas according to the map or plat thereof recorded in Volume 231, Page 6, in the office of the County Clerk of Galveston County, Texas.

is unenforceable and barred from any further effort to enforce the same by any person, firm or entity purporting to have title to the subject property through such deed from any source, including but not limited to Mid Pac Portfolio LLC; Wells Fargo Bank N.A. as Trustee for Salamon Brothers Mortgage Securities VII, Inc., Floating Rate Mortgage Pass through Certificates Series 1999-LBI; or Citigroup Global Markets Realty Corp.

It is further Ordered, Adjudged and Decreed that Paula Welch and Clyde Ashworth shall have and recover of and from Mid Pac Portfolio LLC the following:

A. $ 5,205.00 for attorneys fees before the trial court and through and including the date of this Judgment;

2

843

B. $ 2,500⁰⁰ In the event a notice of appeal is filed herein and Defendants Welch and Ashworth or either of them ultimately prevail on such appeal; and

C. $ 1,500⁰⁰ In the event that either party shall file a petition for review with the Supreme Court of Texas and such petition for review is granted and further in the event that Welch and Ashworth prevail in such proceeding.

D.    all taxable costs of court,

E.    Postjudment interest at the statutory rate of 5.0 percent per annum on attorneys fees state above from the date of entry herein;

FOR WHICH SUMS LET EXECUTION ISSUE.

Any relief not specifically granted herein is DENIED.

This judgment disposes of all issues and all parties and is a FINAL AND APPEALABLE JUDGMENT.

Signed: April 14, 2015.

Michelle Slaughter
District Judge

3



No. 13CV0422

| | |
|---|---|
| MID PAC PORTFOLIO LLC | IN THE 405TH DISTRICT |
| VS. | |
| PAULA WELCH, | |
| CLYDE ASHWORHT and | |
| WELLS FARGO BANK, NA | COURT OF GALVESTON. |
| AS TRUSTEE FOR SALOMON | |
| BROTHERS MORTGAGE | |
| SECURITIES VII, INC. FLOATING | |
| RATE MORTGAGE PASS | |
| THROUGH CERTIFICATES | |
| SERIES 1999-LBI | COUNTY, TEXAS |

## FILING OF DEED OF PAULA WELCH

ATTACHED HERETO please find the Deed of Paula Welch to the property involved in this litigation and the order of muniment of title regarding the property in question.

This deed and probate order was inadvertently omitted as Exhibits 1 and 2 to the affidavit of Paula Welch filed with Defendants' Motion for Summary Judgment on January 15, 2014.

Respectfully submitted,

Mark W. Stevens
TBN 19184300
P.O. Box 8118
Galveston, Texas 77553
409.765.6306
Fax 409.765.6469
Email: markwandstev@sbcglobal.net
Counsel for Defendants Paula Welch
And Clyde Ashworth

1

## Certificate of Service

I certify that a true and correct copy of the foregoing instrument was served upon Mr. Michael Burns, 8111 LBJ Freeway, Suite 1501, Dallas, Texas 75251 via fax 214.276.1546 March 21, 2014.

Mark W. Stevens

Date: January ___9___ 1991

Grantor: JOHN MERCHANT formerly known as JOHN HUSSAIN and wife,
LU ANNE MERCHANT
Grantor's Mailing Address (including county):

Grantee: JERRY N. WELCH and wife, PAULA A. WELCH

Grantee's Mailing Address (including county):

Consideration: TEN AND NO/100 DOLLARS ($10.00) AND OTHER GOOD AND
VALUABLE CONSIDERATION IN HAND PAID BY GRANTEE

Reservations from and Exceptions to Conveyance and Warranty:

This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time; any and all restrictions, covenants, conditions, easements, royalty interest, mineral reservations or leases, if any, relating to the hereinabove described property, but only to the extent that they are still in effect, shown of record in the hereinabove mentioned state and county, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect relating to the hereinabove described property.

When the context requires, singular nouns and pronouns include the plural.

_____
JOHN MERCHANT

_____
LU ANNE MERCHANT

(Acknowledgment)

STATE OF ~~TEXAS~~ MASSACHUSETTS
COUNTY OF

   This instrument was acknowledged before me on the    9 th    day of    January    , 19 91
by John Merchant, formerly known as John Hussain and wife,
   Lu Anne Merchant

_____
Notary Public, State of Texas
Notary's name (printed): FRANCIS E HODAN
Notary's commission expires:
MAY 31, 1996

(Corporate Acknowledgment)

STATE OF TEXAS
COUNTY OF

   This instrument was acknowledged before me on the

by
of
a     FILED FOR RECORD    corporation, on behalf of said corporation.

91 JAN 14 AH 10: 37

COUNTY CLERK
GALVESTON COUNTY, TEXAS

STATE OF TEXAS   COUNTY OF GALVESTON
I hereby certify that this instrument was filed
on the date and time stamped hereon by me and
was duly recorded in the Official Public Records
of Real Property of Galveston County Texas, on
    day of           , 19
         JAN 14 1991

COUNTY CLERK
GALVESTON CO., TEXAS.

_____
Notary Public, State of Texas
Notary's name (printed):

Notary's commission expires:

AFTER RECORDING RETURN TO: STC
Jerry & Paula Welch
c/o Sue Carlow / Remax
1720 Nasa Rd - 1, #101
Houston, Tx. 77058

PREPARED IN THE LAW OFFICE OF:
Fuhrhop & Ferris
William T. Fuhrhop
P. O. Box 457
Dickinson, Tx   77539-0457

```
JERRY NOLAN WELCH,              }
DECEASED                        }     GALVESTON COUNTY, T E X A S
```

## AMENDED ORDER ADMITTING WILL TO PROBATE

## AND AUTHORIZING ISSUANCE OF LETTERS TESTAMENTARY

On this day came on to be heard the Application for Probate of Will filed by PAULA ANN WELCH, Applicant in the Estate of JERRY NOLAN WELCH, Deceased, Decedent.

The Court heard the evidence and reviewed the Will and the other documents filed herein and finds that the allegations contained in the Application are true; that notice and citation have been given in the manner and for the length of time required by law; that Decedent is dead and that four years have not elapsed since the date of Decedent's death; that this Court has jurisdiction and venue of the Decedent's estate; that Decedent left a Will date December 23, 1992, executed with the formalities and solemnities and under the circumstances required by law to make it a valid Will; that on such date Decedent had attained the age of 18 years and was of sound mind; that such Will was not revoked by Decedent; that no objection to or contest of the probate of such Will has been filed; that all necessary proof required for the probate of such Will has been made; that such Will is entitled to probate; that there are no unpaid debts owed by the Estate of Decedent other than those secured by liens on real estate; and that there is no necessity for administration of such Estate.

The Court finds that PAULA ANN WELCH is entitled to receive Letters Testamentary and the same are hereby granted to PAULA ANN WELCH without bond, upon the taking of the Oath as required by law,

STATE OF TEXAS                  CERTIFIED COPY CERTIFICATE
COUNTY OF GALVESTON

This above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public Records of the Galveston County Probate Court in my office.

I hereby certify on March 21, 2014.

DWIGHT D. SULLIVAN, County Clerk
Galveston County, Texas

By _____ Deputy
      Natalie Archer

or Decendent's estate. The proceedings herein shall be recorded by the Clerk in the minutes of this Court.

SIGNED this ___21st___ day of __December__, 1994.

_____
Judge Presiding

By: _Paula Ann Welch_
Paula Ann Welch, Applicant
Attorney Pro Se
1625 Avenue L
Santa Fe, Texas 77510
(409) 925-3278

FILED

Dec 21  4 55 PM '94

COUNTY CLERK
GALVESTON COUNTY TX

---

STATE OF TEXAS                    CERTIFIED COPY CERTIFICATE
COUNTY OF GALVESTON

This above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public Records of the Galveston County Probate Court in my office.

I hereby certify on March 21, 2014.

DWIGHT D. SULLIVAN, County Clerk
Galveston County, Texas

By _____ Deputy
Natalie Archer

STATE OF TEXAS        }

COUNTY OF GALVESTON}

KNOW ALL MEN BY THESE PRESENTS that I, JERRY NOLAN WELCH, residing in the city of SANTA FE, GALVESTON COUNTY, TEXAS, hereby make and publish; and in the contemplation of the certainty of death, do hereby declare this instrument to be my Last Will and Testament, expressly revoking all Wills and Codicils heretofore made by me. I am over the age of eighteen (18). I am of sound mind, having the ability to know and understand the business in which I am engaged, the objects of my bounty and their claims upon me, the general nature and extent of my property, and the effect of the act of making this my Last Will and Testament. It is my wish and intent to make the following provisions for the disposition of my estate upon my demise:

I.

I declare that I am married to PAULA ANN WELCH. I have one (1) child, now living, whose name and birth date is as follows:

JESSICA ANN WELCH                BORN: FEBRUARY 12, 1986

I have no deceased children.

II.

I give, devise, and bequeath all of my estate to my wife, PAULA ANN WELCH, provided that she survives me by thirty (30) days. If my wife does not survive me for that period of time, then I give, devise, and bequeath all of my estate to my child, JESSICA ANN WELCH; and if no children or other descendants of mine should survive me, then to my heirs at law under the statutes of descent and distribution then in force in the State of Texas, and in the proportions provided by the statutes.

III.

I direct that my funeral consist of a memorial service and that the disposition of my remains be as follows:

Cremation

No different funeral or other arrangements may be made or entered into by my heirs.

IV.

I appoint my wife, PAULA A. WELCH, to act as Independent Executrix of my will and estate, to act without bond and free from supervision of any court. I authorize my Executrix to sell, convey, lease (including oil, gas, and mineral leases), mortgage, pledge, otherwise dispose of, and contract with respect to my estate or any part thereof (including the borrowing of money for any purpose), for such considerations and upon such terms and conditions as she may deem proper, intending hereby to give my Executrix all the powers that a fee simple owner would have over the property comprising my estate.

Should my wife, PAULA A. WELCH not survive me or should fail, refuse or be unable or unwilling to serve as

CERTIFIED COPY CERTIFICATE

STATE OF TEXAS
COUNTY OF GALVESTON

The above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in

Alternate Executrix, CYNTHIA SANFORD, who shall act without bond and free of the supervision of any court with all the powers herein granted to my Executrix; and who shall also act as trustee for my child, JESSICA ANN WELCH, who is living at my death, who is a minor or under any other legal disability, with all the powers herein granted to my Executrix, as well as those granted to trustees by the Texas Trust Code as now in force or as hereafter amended, devoting all of the income and principal of her share, as well as any other interest thereafter acquired by her hereunder, to her maintenance, support, and education, the same of which is to be dispersed to her Legal Guardian, DAVID HARVEL until she shall attain the age of eighteen (18) years and until any other disability shall be removed; the share of such descendant who may die before attaining the age of eighteen (18) years to pass in equal shares per stirpes to her descendant, if any, otherwise to my then living descendants in each share per stirpes.

If my Executrix, PAULA A. WELCH or Alternate Executrix, CYNTHIA SANFORD should not survive me, I hereby appoint DAVID HARVEL as Executor, who shall act without bond and free of the supervision of any court with all the powers herein granted to my Executrix and Alternate Executrix.

I direct that no action shall be taken in any court in the administration of my estate other than the probating and recording of this Will.

No bond or other security shall be required of any Executor or Executrix appointed in this Will.

V.

If any person, whether or not related in any way by blood to me, shall either directly or indirectly attempt to oppose or set aside the probate of this Will or to impair or invalidate any of the provisions hereof and such person shall establish a right to any part of my estate, I give and bequeath to such person the sum of One Dollar ($1.00) only and no further interest whatsoever in my estate.

VI.

My wife, PAULA A. WELCH and I are executing Wills at different time intervals, in which each of us is the primary beneficiary of the Will of the other. These Wills are not executed because of any agreement between my wife and myself. Either Will may be revoked at any time at the sole discretion of the maker thereof. Upon the untimely death of my wife, PAULA A. WELCH, this Will shall become null and void and her will shall take precedence.

VII.

If any provision of this Will or of any Codicil thereto is held to be inoperative, invalid, or illegal, it is my intention that all of the remaining provisions thereof shall continue to be fully operative and effective so far as is possible and reasonable.

I herewith affix my signature to this Will on this the 23rd day of December, 1992 at Santa Fe, Galveston County, Texas in the presence of the undersigned witnesses, who have attested this instrument at my request, and in my presence.

_____
JERRY NOLAN WELCH, Testator

CERTIFIED COPY CERTIFICATE

STATE OF TEXAS
COUNTY OF GALVESTON

The above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in

On the date above written, JERRY NOLAN WELCH, well known to us declared to us, and in our presence, that this instrument, consisting of 3 pages, is his Last Will and Testament, and that he then signed this instrument in our presence, and at his request, we now sign this Will as witnesses in each other's presence. Further that JERRY NOLAN WELCH, appeared to us to be of sound mind and lawful age, and under no undue influence.

Witness: *Don Buhler*

Address: 1306 VIRGINIA

So. HOUSTON TEXAS 77587

Witness: *Debbie Langley*

Address: 10200 Fuqua #193

Houston TX 77089

STATE OF TEXAS }

COUNTY OF GALVESTON}

    BEFORE ME, the undersigned authority, on this date personally appeared JERRY NOLAN WELCH, Testator; DON BUHLER and Debbie Langley , the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said JERRY NOLAN WELCH, Testator declared to me and to the said witnesses in my presence that said instrument is his LAST WILL AND TESTAMENT, and that he had willingly made and executed it as his free act and deed for the purposes therein expressed; and the said witnesses, each on his oath stated to me, in the presence and hearing of the said Testator, that the said Testator had declared to them that said instrument is his LAST WILL AND TESTAMENT, and the he executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the Testator and at his request; that he was at that time eighteen (18) years of age or over, and was of sound mind; and that each of said witnesses was then at least fourteen (14) years of age.

*Jerry Nolan W Welch*
JERRY NOLAN WELCH, TESTATOR

FILED

*Don Buhler*
WITNESS

*Debbie Langley*
WITNESS

Apr 8 3 11 PM '94

*Jean L. Richardson*
COUNTY CLERK
GALVESTON COUNTY TX

SUBSCRIBED AND SWORN TO THIS 23RD DAY OF DECEMBER, 1992.

M. A. COLEMAN
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
OCT. 26, 1995

*MA Coleman*
NOTARY PUBLIC FOR THE STATE OF TEXAS

CERTIFIED COPY CERTIFICATE

STATE OF TEXAS
COUNTY OF GALVESTON

The above is a full, true, and correct photographic copy of the original record now in my lawful custody and possession, as the same is…

The 405th District Court grants leave to Counsel for Paula Welch to refile this Supplemental Summary Judgment Motion under the correct Cause Number of 13CV0422.

No. 06CV0224-A

CLYDE ASHWORTH
AND PAULA WELCH

§ IN THE 122ND DISTRICT 13CV0422,

V.

§ COURT, GALVESTON
3/31/14

AMERIQUEST MORTGAGE
COMPANY F/K/A LONG BEACH
MORTGAGE

§ COUNTY, TEXAS

### ORDER ON MOTION TO
### SUPPLEMENT SUMMARY JUDGMENT MOTION AND REPLY

The Motion of Defendants and Counter Plaintiffs Paula Welch and Clyde Ashworth to supplement their Motion for Summary Judgment and Responses to the Motion of Plaintiff Mid Pac is hereby GRANTED.

It is ORDERED that Defendants' Motion for Summary Judgment and Responses to the Summary Judgment Motion of Plaintiff Mid Pac shall be deemed to have included specific reference to and invocation of Texas Civil Practice & Remedies Code Sec. 16.025.

Other Provisions: _____

_____

_____

Signed: March 31, 2014.

Michelle Slaughter
District Judge

3

13-CV-0422
DCORGMLE
Order Granting Motion for Leave
833386



☒ CORRECTED (if checked)

| LENDER'S name, street address, city, state, ZIP code, and telephone no.<br><br>BSI FINANCIAL SERVICES        -603<br>314 S. FRANKLIN STREET<br>TITUSVILLE, PA 16354 | | OMB No. 1545-0877<br><br>2012<br><br>Form 1099-A | **Acquisition or Abandonment of Secured Property** |
|---|---|---|---|
| LENDER'S federal identification number<br>04-3800293 | BORROWER'S identification number<br>XXX-XX-7672 | 1 Date of lender's acquisition or knowledge of abandonment<br>09/28/12 | 2 Balance of principal outstanding<br>$ 268893.72 | **Copy B**<br>**For Borrower** |
| BORROWER'S name<br><br>CLYDE ASHWORTH<br>1625 AVE L<br>SANTA FE, TX 77510 | | 3 | 4 Fair market value of property<br>$ 437369.00 | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| | | 5 If checked, the borrower was personally liable for repayment of the debt ► ☒ | |
| | | 6 Description of property<br>1625 AVE L | |
| Account number (see instructions)<br>0000013777 | | | |

Form 1099-A          (keep for your records)          Department of the Treasury - Internal Revenue Service

## Instructions for Borrower

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition generally is measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property, or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences.

Property means any real property (such as a personal residence); any intangible property; and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

**Borrower's identification number.** For your protection, this form may show only the last four digits of your social security number (SSN), individual taxpayer identification number (ITIN), or adoption taxpayer identification number (ATIN). However, the issuer has reported your complete identification number to the IRS and, where applicable, to state and/or local governments.

**Account number.** May show an account or other unique number the lender assigned to distinguish your account.

**Box 1.** For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

**Box 2.** Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned.

**Box 4.** Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

**Box 6.** Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

BSI FINANCIAL SERVICES        -603
314 S. FRANKLIN STREET
TITUSVILLE, PA 16354

## IMPORTANT TAX INFORMATION

1055

CLYDE ASHWORTH
1625 AVE L
SANTA FE, TX 77510

549



LAZCSAB 77S10

FGM PA 152 02/01/2013

550

☐ CORRECTED (if checked)

| LENDER'S name, street address, city, state, ZIP code, and telephone no. | | OMB No. 1545-0877 | **Acquisition or Abandonment of Secured Property** |
|---|---|---|---|
| BSI FINANCIAL SERVICES -603<br>314 S. FRANKLIN STREET<br>TITUSVILLE PA 16354 | | 20**12**<br>Form 1099-A | |

| LENDER'S federal identification number | BORROWER'S identification number | 1 Date of lender's acquisition or knowledge of abandonment | 2 Balance of principal outstanding | **Copy B** |
|---|---|---|---|---|
| 04-3800293 | XXX-XX-7672 | 09/28/12 | $ 268893.72 | **For Borrower** |

| BORROWER'S name | 3 | 4 Fair market value of property | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
|---|---|---|---|
| CLYDE ASHWORTH<br>PAULA WELCH<br>1625 AVE L<br>SANTA FE TX 77510 | | $ 0.00 | |
| | 5 If checked, the borrower was personally liable for repayment of the debt ▶ ☒ | | |
| | 6 Description of property<br>1625 AVE L | | |

| Account number (see instructions) | | |
|---|---|---|
| 0000013777 | | |

Form **1099-A**          (keep for your records)          Department of the Treasury - Internal Revenue Service

## Instructions for Borrower

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition generally is measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property, or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences.

Property means any real property (such as a personal residence); any intangible property; and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

**Borrower's identification number.** For your protection, this form may show only the last four digits of your social security number (SSN), individual taxpayer identification number (ITIN), or adoption taxpayer identification number (ATIN). However, the issuer has reported your complete identification number to the IRS and, where applicable, to state and/or local governments.

**Account number.** May show an account or other unique number the lender assigned to distinguish your account.

**Box 1.** For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

**Box 2.** Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned.

**Box 4.** Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

**Box 6.** Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

BSI FINANCIAL SERVICES -603
314 S. FRANKLIN STREET
TITUSVILLE PA 16354

## IMPORTANT TAX INFORMATION

CLYDE ASHWORTH
PAULA WELCH
1625 AVE L
SANTA FE TX 77510

551

LAZCSAB 77510

PGH PA 152 02/21/2013

548